[Nos. 41813-1-I; 42131-0-I. Division One. June 28, 1999.]

*In the Matter of the Marriage of* KENNETH A. KNIES, *Appellant*, and PATRICIA K. KNIES, *Respondent*.

*Catherine Wright Smith* of *Edwards, Sieh, Smith & Goodfriend*; *John Leonard Erickson* of *Law Offices of John Leonard Erickson*, for appellant.

*Elizabeth Ann Helm* of *Northwest Women's Law Center*, for respondent.

KENNEDY, C.J. — In a 1990 decree dissolving their 23-year marriage, Patricia Knies received 50 percent of her husband's pension with the Washington State Patrol, but no portion of any future disability payments. In 1996, six days before he was eligible to retire, Kenneth Knies was granted job-related disability status. Ms. Knies moved for an order directing Mr. Knies to pay a portion of his disability payments to her. The trial court concluded that Mr. Knies' disability payments were, in effect, a retirement benefit and subject to division in accordance with the original decree. We affirm the court's decision to grant Ms. Knies a portion of the disability payments commencing as of the date of trial. We also affirm the award of attorney fees at trial and grant fees to Ms. Knies for defending the direct appeal but not for prosecuting the cross-appeal.

## FACTS

Patricia and Ken Knies married in 1967 and divorced in 1990. In accord with the parties' property settlement agreement, the dissolution decree awarded Ms. Knies 50% of the community interest in Mr. Knies' pension with the Washington State Patrol (Patrol). Mr. Knies was to retain disability payments.[1]

Mr. Knies joined the Patrol in 1970. For most of his career, Mr. Knies had knee problems, which resulted in total replacement of his right knee. In October 1995, Mr. Knies requested job-related disability status because of the arthritic condition in his knees. Patrol Chief Annette Sandberg authorized non-job-related disability retirement, to become effective March 14, 1996. Mr. Knies appealed, and

---

[1] "Except for that portion of the Husband's pension which is awarded to Wife, Husband is awarded all rights and benefit derived as a result of his past or present employment, all of which include, but are not limited to . . . disability payments[.]" Clerks Papers at 108.

a review board recommended that Mr. Knies be placed on job-related disability. As a result, Chief Sandberg changed Mr. Knies's status from non-job-related disability to job-related disability and established the effective date as March 7, 1996. If Mr. Knies had not been placed in job-related disability status, he would have been eligible to retire from the Patrol after 25 years of service on March 14, 1996.[2]

A member of the Patrol may retire after 25 years of service or at age 55, regardless of the number of years of service. All members, however, must retire by age 60. No mechanism exists to automatically transfer Mr. Knies from disability status to retirement status. Therefore, he will not retire from the Patrol unless he affirmatively decides to return to active duty for six (6) days to complete his 25 years of service. Even if Mr. Knies were 55 years old and eligible to retire, he would not be required to do so, but could remain on disability indefinitely until death. When asked in his deposition whether he would be willing to return to work for one week to buy up the service retirement, Mr. Knies said, "No."

The job-related disability income that Mr. Knies receives is nontaxable, and he is entitled to lifetime medical and dental benefits while on job-related disability status. Retirement benefits, in contrast, are taxable, and retirees receive less medical and dental coverage than individuals receiving job-related disability payments.

Although Mr. Knies could be recalled to active duty status, Chief Sandberg testified that she would not require any trooper on disability, including Mr. Knies, to return to active service, due to union pressures.

A trooper on job-related disability status is permitted to earn income from outside sources with no reduction in disability pay. While on job-related disability, Mr. Knies was employed as a civilian with the Department of Corrections.

---

[2]The Findings of Fact state that Mr. Knies' retirement eligibility date was March 13, 1996. The record, however, is unclear as to whether the date is March 13 or 14. Ms. Knies agreed to use March 14 for consistency, and we do so as well.

In November 1996, six years after the parties dissolved their marriage, Ms. Knies moved for an order directing Mr. Knies to pay a portion of his disability payments to her. After an evidentiary hearing on October 23, 1997, the trial court concluded that Mr. Knies's disability payments were, in effect, a retirement benefit, and thus subject to division in accordance with the parties' 1990 dissolution decree. The trial court's oral decision further explained that the "crown jewel" at the time of the divorce was Mr. Knies's pension, and it was divided in half accordingly. The court found that the remainder of the language in the decree, including the provision addressing disability payments, was boilerplate. The court concluded that "common sense" and "the law" dictated that the "disability be designated a pension payment."

The trial court ordered that Ms. Knies receive $664.02 per month from Mr. Knies' disability payments, commencing as of the date of trial, October 23, 1997. This figure was calculated based on what Ms. Knies would have received had he retired rather than become disabled. The court declined to order payments retroactive to March 14, 1996, however, refusing to speculate as to whether Mr. Knies actually would have retired after 25 years, but basing the decision on testimony that most troopers, on average, retire after 26 to 28 years of service. Finally, the court awarded Ms. Knies $4,500 in attorney fees.

Mr. Knies appeals the trial court's decision, arguing that it improperly relied on CR 60(b)(11) to modify the dissolution decree, and seeking a reversal of the trial court's award of attorney fees. Ms. Knies cross appeals, seeking a reversal of the trial court's decision ordering payments to begin as of the date of trial rather than as of March 14, 1996.

## DISCUSSION

### A. CR 60(b)(11)

██ Mr. Knies contends the court did not have the authority under CR 60(b)(11) to modify the property award

six years after entry of the divorce decree. RCW 26.09-.170(1) provides in pertinent part that "[t]he provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." The decision to vacate or reopen a judgment under CR 60(b) will not be overturned on appeal unless it plainly appears that the trial court has abused its discretion. *In re Marriage of Tang*, 57 Wn. App. 648, 653, 789 P.2d 118 (1990). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *Id.*

██ Rule 60(b)(11) provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . .

> (11) Any other reason justifying relief from the operation of the judgment.

> The motion shall be made within a reasonable time[.]

This subsection is limited to situations involving "extraordinary circumstances." "The circumstances must relate to 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.' " *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985) (quoting *State v. Keller*, 32 Wn. App. 135, 141, 647 P.2d 35 (1982)).

In *In re Marriage of Jennings*, 91 Wn. App. 543, 546-49, 958 P.2d 358 (1998), *review granted*, 137 Wn.2d 1007, 978 P.2d 1097 (1999), the court summarized the limited nature of postdecree challenges to property settlements, concluding that only three Washington cases had successfully reopened property settlements under CR 60(b)(11). Each of these cases involved the same "extraordinary circumstance," the retroactive application of the Uniform Services Former Spouses' Protection Act (USFSPA), which

superseded a U.S. Supreme Court decision[3] holding that state courts were prohibited from treating military pensions as community property.

Last year, we added a fourth decision unrelated to the USFSPA line of cases: *In re Marriage of Thurston*, 92 Wn. App. 494, 963 P.2d 947 (1998). In *Thurston*, the former wife argued that her former husband had not complied with a condition of the dissolution decree requiring him to transfer two units of a limited partnership to her. Nineteen months after entry of the decree, the trial court vacated the property disposition under CR 60(b)(11), concluding that the nonoccurrence of a material condition of the dissolution decree constituted an extraordinary circumstance warranting relief. We affirmed, based on a colloquy between the court and counsel at the time of the original decree establishing that the conveyance of property to the wife was an "express condition" of the parties' property settlement agreement. *Id.* at 503.

Other parties who have attempted postdecree vacation of property settlements generally have been denied relief. *See In re Marriage of Irwin*, 64 Wn. App. 38, 64, 822 P.2d 797 (1992) (changed financial circumstances is insufficient reason to allow 60(b)(11) motion, but because husband merely requested a delay in payment due to emergency financial difficulties, any error in granting the motion was harmless); *Tang*, 57 Wn. App. at 654-56 (fact that parties' settlement agreement did not list, value, or characterize property did not constitute "unusual situation"); *In re Marriage of Burkey*, 36 Wn. App. 487, 488-91, 675 P.2d 619 (1984) (inadequate representation did not constitute "unusual circumstances"). In *Jennings*, the parties' dissolution decree awarded the wife one-half of her husband's military retirement, but none of the military disability pay that he was receiving at the time of the decree. Due to his worsening disability, the husband's retirement pay was reduced, postdecree, resulting in a decrease in the wife's portion of the retirement pay from $813.50 to $136 per month. The *Jen-*

---

[3]*McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981).

*nings'* majority determined that this reduction did not constitute an "extraordinary circumstance" because only one asset declined substantially in value. The majority reasoned that "a party must show more than a postdecree change in the value of assets" in order to obtain relief. *Jennings*, 91 Wn. App. at 549.[4]

In the present case, we find that extraordinary circumstances existed, and the trial court did not abuse its discretion in modifying the property settlement under CR 60(b)(11). Mr. Knies was placed on job-related disability status effective March 7, 1996, six days before he was eligible to retire. Evidence reflects that Mr. Knies did not intend to return to active duty status and that the Patrol likely would not require Mr. Knies to return to active service because of union issues. Other positions (e.g., limited duty jobs) were available to Mr. Knies had he wanted to round out the six days necessary to reach retirement status. He chose disability instead.

Once Mr. Knies's application for job-related disability status was approved, he had little incentive to remove himself from disability status because the law permits troopers to remain on job-related disability for life, receive tax-free income, benefit from full medical and dental cover-

---

[4]In a strong dissent to *Jennings*, Judge Morgan opined that the original decree was ambiguous and subject to clarification: "A dissolution decree may be clarified, as opposed to modified, when it leaves ambiguous the rights of a party." 91 Wn. App. at 551 (Morgan, J., dissenting; citations omitted). Because some disability pensions may substitute for regular retirement pensions or contain elements attributable to retirement pensions, *see In re Marriage of Nuss*, 65 Wn. App. 334, 343, 828 P.2d 627 (1992) and because a party cannot, by electing to take a disability award rather than regular retirement, eliminate the community interest in the award, *see In re Marriage of Kittleson*, 21 Wn. App. 344, 352, 585 P.2d 167 (1978), the same argument could well be made in the instant matter. Although the trial court relied upon CR 60(b)(11), the oral decision reflects that the court may have actually intended to clarify, rather than modify the decree: "I think the law definitely dictates that this disability payment be designated a pension payment. . . . [I]f this were purely a disability[,] I would throw in with Mr. Knies and say this should be separate property. But in this case I think disability does not mean disability. I think disability means retirement." Trial Court's Oral Decision, October 23, 1997, Report of Proceedings at 164-65. The trial court went on to say: "I think that we need to do our best to maintain and uphold the original intention of the parties from 1990 that Judge Swedberg placed into his . . . decree[.]" Report of Proceedings at 167. The trial court's ruling could also be affirmed as a clarification of the original decree.

age, and still earn income from outside sources. In effect, Mr. Knies' job-related disability status allowed him to circumvent the property settlement agreement and virtually eliminate any possibility that Ms. Knies would obtain her one-half interest in his pension. Accordingly, the court did not abuse its discretion in finding the extraordinary circumstances necessary to satisfy CR 60(b)(11).

## B. Disability Payments as Community Property

██ Mr. Knies contends that the trial court improperly determined that disability benefits may substitute for retirement pensions for purposes of property division. We disagree. In general, retirement benefits are considered deferred compensation for past services and thus are determined to be community property to the extent earned during marriage. *In re Marriage of Nuss*, 65 Wn. App. 334, 343, 828 P.2d 627 (1992). Disability payments, on the other hand, are considered compensation for lost future wages and are not an asset for distribution at the end of a marriage. *Id.* Nevertheless, courts look carefully at the disability payment received to determine whether the payment has characteristics of an earned pension in addition to disability. *Arnold v. Department of Retirement Sys.*, 128 Wn.2d 765, 778-79, 912 P.2d 463 (1996) (citing *In re Marriage of Anglin*, 52 Wn. App. 317, 759 P.2d 1224 (1988)). The *Nuss* court explained:

> ██ome disability pensions may substitute for regular retirement pensions or contain elements attributable to retirement pensions. Where a spouse has elected to receive disability in lieu of retirement benefits, for instance, only the amount of disability received over and above what would have been received as retirement benefits is considered that spouse's separate property.

*Id.* (citations omitted) (finding no abuse of discretion where trial court determined that company plan was community property when plan in question contained elements of both deferred compensation and future earnings replacement). *In re Marriage of Kittleson* similarly held that the trial

court did not abuse its discretion when it characterized disability pension as community property. The court stated:

> [T]he husband had an election here between either taking his regular retirement benefit or taking the disability award, which he chose to do. Certainly, the husband could not by electing to take a disability award rather than a regular retirement eliminate the community interest in the award.

*In re Marriage of Kittleson*, 21 Wn. App. 344, 352, 585 P.2d 167 (1978); *accord In re Marriage of Huteson*, 27 Wn. App. 539, 541-42, 619 P.2d 991 (1980) (determining that disability contained no elements of deferred compensation where disability occurred seven months after permanent separation of parties).

Mr. Knies correctly points out that *Kittleson* involved an appeal from a dissolution decree as opposed to a postdecree modification. This distinction, however, does not affect the rule articulated by the *Kittleson* court. By choosing to accept the disability benefits in lieu of retirement, only six days before he was eligible to retire, albeit six years after entry of the dissolution decree, Mr. Knies effectively altered the character of his disability to one of deferred compensation that can now be subject to property division.

Mr. Knies further argues that the court could not have characterized disability benefits as retirement without also finding that he would have retired had he not become eligible for job-related disability status. Based on the specific circumstances of this case, however, this argument fails. It was not untenable for the court to conclude, after hearing all the evidence, that Mr. Knies intended to remain on disability indefinitely. Therefore, we affirm the court's decision to award Ms. Knies what she would have received had Mr. Knies retired.

C. Commencement of Disability Payments

■ Ms. Knies cross appeals the trial court's decision to commence payment of the disability award on October 27, 1997, the date of trial, as opposed to March 14, 1996, the

date Mr. Knies was eligible to retire. We review the trial court's distribution of marital property for a manifest abuse of discretion. *In re Marriage of Zahm*, 91 Wn. App. 78, 82, 955 P.2d 412 (1998). We find no abuse of discretion here.

Ms. Knies relies on *In re Marriage of Hurd*, 69 Wn. App. 38, 848 P.2d 185 (1993), for her contention that disability payments should have commenced on March 14, 1996. In *Hurd*, the wife challenged the court's valuation of her husband's pension. The husband had become eligible to retire by the time of separation, but testified that he planned to continue working and that no mandatory retirement applied to him. *Id.* at 43. The court found that because the husband "may retire at any time and has an unconditional right to immediate payment of his pension upon his retirement, his pension is both a vested and matured benefit." *Id.* at 45. The court thus valued his pension at the date of dissolution rather than some future date when he might have chosen to retire. *Id.* at 45-46.

Unlike the husband in *Hurd*, Mr. Knies was six days short of being eligible for retirement when he was placed on job-related disability status, so his pension had not matured as of that date, and will never mature unless Mr. Knies elects to return to active job status for at least another six days—which he testified he did not intend to do and which the Chief of the State Patrol stated she would not require. The trial court chose the date of trial based on evidence that most troopers retire after serving between 26 and 28 years. The trial date was approximately 19 months after Mr. Knies would have become eligible for retirement if he had remained on active duty. The trial court was not bound by *Hurd* because Mr. Knies' pension, as such, may never mature. We conclude that the court exercised its discretion on tenable grounds and thus affirm the decision to award Ms. Knies her share of the disability payments commencing as of the date of trial.

D. Attorney Fees

 Mr. Knies argues that the trial court erred in

awarding Ms. Knies $4,500 in attorney fees. An award of attorney fees under RCW 26.09.140 is discretionary and is reviewed for abuse of discretion. *In re Marriage of Williams*, 84 Wn. App. 263, 272, 927 P.2d 679 (1996), *review denied*, 131 Wn.2d 1025 (1997). The need of the requesting party is balanced against the other party's ability to pay. *Id.*

Mr. Knies claims that his former wife could not demonstrate a need for fees because she has a secure job, an individual retirement account (IRA), $12,000 in cash, and $160,000 equity in her home. At trial, Mr. Knies testified that in addition to his disability income and income from other employment, he had approximately $95,000 in a deferred compensation account, two IRAs worth approximately $13,000, and savings accounts of approximately $35,000. The court did not abuse its discretion in finding that "Mr. Knies has the ability to pay and Miss Knies does not, and Miss Knies had no choice in bringing this action." We affirm the award of attorney fees.

Ms. Knies also requests attorney fees on appeal under RAP 18.1. Pursuant to RAP 18.3(c), both parties filed affidavits of financial need. Ms. Knies's need has increased, due to the equitable lien placed upon real property awarded to her at the time of the final decree, which lien became due in June 1998. Mr. Knies's ability to pay has increased by virtue of that same equitable lien. In all other respects, the parties are in similar financial condition as at the time of trial. In awarding attorney fees on appeal, we examine "the arguable merit of the issues on appeal and the financial resources of the respective parties." *In re Thompson*, 34 Wn. App. 643, 648, 663 P.2d 164 (1983); *In re Marriage of Edwards*, 99 Wn.2d 913, 920, 665 P.2d 883 (1983). Though we have rejected both the direct and cross-appeals, neither party's positions were frivolous. In the exercise of our discretion, we grant Ms. Knies's request to be awarded attorney fees for defending the direct appeal, but deny her request for prosecuting the cross-appeal.

Affirmed.

Cox and APPELWICK, JJ., concur.

Reconsideration granted and opinion modified July 23, 1999.