# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JOHN ARTHUR MASON,<br><br>Appellant,<br><br>and<br><br>TATYANA IVANOVNA MASON,<br><br>Respondent. | No. 49839-1-II<br><br><br><br>UNPUBLISHED OPINION |

MAXA, C.J. – John Mason appeals the trial court's order vacating a 2013 order requiring his former wife Tatyana Mason to pay him child support. The trial court vacated the child support order under CR 60(b)(11) because in the 2013 proceeding the court had not been informed that John[1] had an obligation to support Tatyana based on an I-864 affidavit of support relating to Tatyana's immigration to the United States.

We hold that (1) the trial court erred in vacating the 2013 child support order because the failure of the parties to inform the court of the I-864 affidavit was not an extraordinary circumstance extraneous to the prior proceedings, (2) the trial court did not err in awarding Tatyana a portion of her expert witness fees under RCW 26.09.140, and (3) the trial court erred in imposing CR 11 sanctions against John without including specific findings supporting the award in its CR 11 order.

---

[1] To avoid confusion, we refer to the parties by their first names. We intend no disrespect.

Accordingly, we reverse the trial court's order vacating the 2013 child support order and a related order vacating an order that prospectively modified Tatyana's child support obligation. We affirm the trial court's award of expert fees to Tatyana under RCW 26.09.140. And we vacate the trial court's order imposing CR 11 sanctions on John and remand either for entry of specific findings supporting the award of CR 11 sanctions that are included or incorporated in the court's CR 11 order or a determination that CR 11 sanctions are not warranted.

FACTS

*Marriage and Dissolution*

Tatyana came to the United States in 1999 on a "fiancée visa" sponsored by John. At the time, Tatyana did not speak English, so John filled out her immigration paperwork. One of the forms that John signed was an affidavit of support, known as an I-864 affidavit, agreeing that he would provide financial support to Tatyana for a certain period of time.

The parties married in 1999 and later had two children. John filed a petition for dissolution in 2007. The trial court entered a decree of dissolution in 2008, which allocated residential time evenly and included a requirement that John make child support payments to Tatyana.

In 2011, John filed a petition to modify the parenting plan based on his allegation that Tatyana abused the children. The trial court held a trial on the modification, during which Tatyana was represented by counsel. The trial court granted John's petition to modify the parenting plan and entered a finding of abuse against Tatyana under RCW 26.09.191.

As part of its modification, the trial court entered an amended order of child support on November 25, 2013. The court imputed income to Tatyana on the basis that she was voluntarily unemployed. The previous year Tatyana had worked and been paid at an hourly rate of $12, and

she agreed that this level of income should be imputed to her. The court ordered that Tatyana pay $412.04 per month in child support. Neither party informed the court that John had signed an I-864 affidavit agreeing that he would provide financial support to Tatyana.

Tatyana appealed the trial court's order granting John's petition. *See In re Marriage of Mason*, No. 45835-7-II (Wash. Ct. App. July 7, 2015) (unpublished), http://www.courts.wa.gov/opinions/. She did not contest the trial court's imputation of income or its imposition of child support payments. *Id.* at 1. In July 2015, we affirmed the trial court's order. *Id.*

*Motions to Dismiss Child Support*

Shortly after we affirmed the trial court's modification, Tatyana filed a series of three motions in the trial court to dismiss her child support obligation.[2] She filed a motion in September 2015, arguing that it was error to impute income to her and that her unpaid child support was interfering with her immigration status. A superior court commissioner denied the motion. Tatyana did not appeal.

The same day that her first motion was denied, Tatyana filed a second motion requesting modification of her child support obligation and again contesting the imputation of income and child support. On October 13, 2015, a superior court commissioner granted Tatyana's motion in part. The commissioner entered an amended child support order ruling that Tatyana was unable to work and imposing monthly child support of $50 per child, the statutory minimum. However, the commissioner denied Tatyana's motion to vacate unpaid child support that already had accrued. Neither party appealed.

---

[2] The case procedure has been abbreviated at certain points for clarity.

Next, Tatyana filed a petition to modify the parenting plan and a motion to vacate the full amount of the child support order. The motion to vacate alleged various errors relating to the 2013 child support order. The motion also described Tatyana's precarious economic situation, including the allegation that she was unable to obtain employment because of her immigration status and unpaid child support. Tatyana did not reference John's I-864 affidavit by name, but stated, "I am asking for a maintains [sic] fee, since he brought me to here, promised to a government to support me 100%." Clerk's Papers (CP) at 1001.

A superior court commissioner denied Tatyana's petition to modify the parenting plan and motion to vacate the child support order. Tatyana moved to revise the commissioner's order. At an April 29, 2016 hearing, Tatyana argued that John had completed an I-864 affidavit of support as part of her initial visa application. Tatyana presented a copy of the affidavit, and John objected because it was not notarized or dated. The trial court continued the hearing to July 8 and directed Tatyana to have an official authenticate the immigration documents.

Before the July 8 hearing, John submitted a declaration stating that he did not remember what he signed during the immigration process in 1999 and did not remember filing the I-864 affidavit. He added, "[Tatyana] claims that I would have had to complete an I-864 as part of the fiancé's [sic] visa application but that is not true." CP at 403. He explained that the fiancée visa required a different form and that the I-864 affidavit was instead required for family-based immigration. John added that he had attempted to submit a Freedom of Information Act request for the documents he had submitted but he received a letter stating that he was not eligible to receive them unless Tatyana signed the request.

At the July 8 hearing, the trial court stated that it would treat Tatyana's motion to vacate the 2013 child support order as a motion to vacate under CR 60(b). In a subsequent letter ruling,

the court explained that because the parties had raised credibility issues, a trial was necessary to allow the parties to present testimony.

*Trial and Ruling*

At trial, Tatyana represented herself. She offered the testimony of Jay Gairson, an immigration attorney, as an expert witness. The trial court ruled that it would allow Gairson's testimony on immigration law to assist in understanding the issues and law in that area.

Gairson testified generally about immigration law, as well as about Tatyana's particular immigration situation. He stated that he had reviewed Tatyana's files and concluded that John had signed an I-864 affidavit. The affidavit imposed on John a financial obligation to Tatyana, requiring him to support her up to 125 percent of the federal poverty guideline. Gairson explained how the support requirement operated: "If you look at those guidelines for a . . . single individual, you take 125 percent of that amount and then you subtract any income that she would have earned from that year, and that will tell you how much Mr. Mason would have owed her." Report of Proceedings (RP) (Oct. 17, 2016) at 67.

The trial court entered an order granting the motion to vacate and provided written findings of fact and conclusions of law. The court found that John had signed an I-864 affidavit, but that there was no evidence that any other judge in the case had considered the affidavit. The trial court entered a conclusion of law that the I-864 affidavit created a continuing obligation on John to support Tatyana and that the obligation had not terminated. The court also concluded, "The I-864 affidavit is such a significant factor in this case that to set child support without its consideration creates an unjust result." CP at 124. In its oral ruling, the trial court explained that the I-864 affidavit would be considered "in the calculation of the child support and as to offsets." RP (Nov. 2, 2016) at 472.

The court ruled that CR 60(b)(11) was the appropriate basis to bring a motion to vacate and that the 2013 child support order should be vacated because the court was not informed of the I-864 affidavit when the order was entered.[3]  On that basis, the court vacated the 2013 child support order as well as any remaining unpaid child support.  The court stated that John could seek entry of a new child support order, and that the court would consider a request for expert fees at a later hearing.

The court subsequently entered an order in December 2016 vacating the amended child support order the commissioner entered on October 13, 2015, which the court inadvertently failed to include in its previous order.

*Expert Witness Fees*

The trial court held a hearing on the issue of expert witness fees.  Tatyana requested the costs of Gairson's expert testimony, which he calculated to be $12,800, as well as sanctions under CR 11.  The trial court awarded Tatyana costs equal to two-thirds of Gairson's fee based on the parties' relative financial positions.

The trial court awarded to Tatyana the remaining one-third of Gairson's fee as CR 11 sanctions.  The court based its sanction award on John's declaration statements that because he was not required to file I-864 affidavit, he did not do so.  The court reasoned,

> Those statements raise the issue of the existence of the I-864, which is what required this court to have a three-day trial over whether or not that document existed.  Now, clearly clients are entitled to aggressive advocacy, but I believe the advocacy in this case presented an untrue presentation to the court which created unnecessary litigation.

RP (Dec. 9, 2016) at 18.  However, the court did not enter any written findings regarding CR 11 and did not include the basis of its award in the CR 11 order.

---

[3] The trial court considered whether vacation would be appropriate under CR 60(b)(1), (2) and (3), but declined to apply those subsections.

Based on its rulings, the trial court entered an order awarding Tatyana $8,533 in costs under RCW 26.09.140 and $4,267 in sanctions under CR 11.

John appeals the trial court's order vacating the 2013 child support order and the order awarding expert fees and imposing CR 11 sanctions.

ANALYSIS

A.      FORM I-864 AFFIDAVIT OF SUPPORT

This court previously reviewed the effect of an I-864 affidavit of support in *In re Marriage of Khan*, 182 Wn. App. 795, 798-99, 332 P.3d 1016 (2014).  As the court explained, a family-sponsored applicant for permanent residency in the United States must prove that he or she is unlikely to become a public charge.  *See* 8 U.S.C. § 1182(a)(4).  To that end, the applicant's family sponsor may be required to execute and submit an affidavit of support on Form I-864.  8 U.S.C. §§ 1182(a)(4)(C)(ii), 1183a(a)(1).  The sponsor must agree "to provide support to maintain the sponsored [immigrant] at an annual income that is not less than 125 percent of the [f]ederal poverty line during the period in which the affidavit is enforceable."  8 U.S.C. § 1183a(a)(1)(A).

The I-864 support obligation continues indefinitely until it is terminated.  *Khan*, 182 Wn. App. at 799.  Termination occurs when the sponsored immigrant (1) becomes a United States citizen, (2) has worked or is credited with 40 qualifying quarters of coverage (as defined by the Social Security Act, 42 U.S.C. § 413), (3) no longer has lawful permanent resident status and departs the United States, (4) becomes subject to removal but obtains a new grant of adjustment of status as relief from removal, or (5) either the sponsor or the sponsored immigrant dies.  8 U.S.C. § 1183a(a)(2)-(3); 8 C.F.R. § 213a.2(e)(2).  The support obligation continues after

dissolution of the marriage between the sponsor and the sponsored immigrant. *Khan*, 182 Wn. App. at 799.

The I-864 affidavit creates a binding contract between the sponsor and the federal government, and establishes the sponsored immigrant as a third-party beneficiary. *Id.* The immigrant can enforce the support obligation against his or her sponsor. 8 U.S.C. § 1183a(a)(1)(B); *Khan*, 182 Wn. App. at 799, 803-04.

B.      APPLICATION OF CR 60(b)(11)

John argues that the trial court erred in applying CR 60(b)(11) to vacate the 2013 child support order.[4]  We agree.

1.      Legal Principles

Under CR 60(b), a trial court may relieve a party from a final judgment, order, or proceeding for one of 11 stated reasons.  A catch-all provision under CR 60(b)(11) states that the court may grant relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment."  That provision is "intended to serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies." *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017).  CR 60(b)(11) applies to "extraordinary circumstances involving irregularities extraneous to the proceeding." *Shandola*, 198 Wn. App. at 895.

The trial court has discretion in deciding whether to grant or deny a motion to vacate under CR 60(b). *Jones v. City of Seattle*, 179 Wn.2d 322, 360, 314 P.3d 380 (2013).  Therefore,

---

[4] Initially, John argues that Tatyana's motion was barred by collateral estoppel because she already appealed the child support order and the order was affirmed.  Br. of App. at 25-28.  We decline to consider this argument because John did not raise it in the trial court.  RAP 2.5(a).  As an aside, we note that RCW 26.09.170(5)(a) expressly states that a party owing child support may file a petition to amend "at any time."

we review CR 60(b) orders for abuse of discretion. *Shandola*, 198 Wn. App. at 896. A trial court has abused its discretion when its decision is based on untenable grounds or is made for untenable reasons. *Id.*

For the purpose of this court's review, any unchallenged findings of fact included in the trial court's order are verities on appeal. *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

2.    Extraordinary Circumstances

a.    Legal Background

A trial court may vacate a judgment under CR 60(b)(11) only when the case involves "extraordinary circumstances." *Shandola*, 198 Wn. App. at 903. Courts considering motions to vacate orders in a dissolution have found circumstances to be sufficiently extraordinary when they materially frustrate the purpose of the relevant order. *See, e.g.*, *In re Marriage of Hammack*, 114 Wn. App. 805, 810-11, 60 P.3d 663 (2003); *In re Marriage of Thurston*, 92 Wn. App. 494, 503-04, 963 P.2d 947 (1998).

The court in *Hammack* considered a separation agreement that exempted one party from child support payments in exchange for the other party receiving a larger share of the couple's property. 114 Wn. App. at 807. The court concluded that the agreement waiving child support was against public policy, making it void and unenforceable. *Id.* at 811. A settlement based on a void agreement was an extraordinary circumstance sufficient to vacate the settlement. *Id.*

In *Thurston*, the court vacated a dissolution decree when one party refused to transfer a partnership interest as required in the decree. 92 Wn. App. at 496-97. Because failure of the transfer would "throw the whole settlement out," it was a material condition of the settlement and presented an extraordinary circumstance supporting vacation. *Id.* at 503-04 (quotation marks

9

omitted); *see also In re Marriage of Knies*, 96 Wn. App. 243, 250-51, 979 P.2d 482 (1999) (holding that transition of the obligor's income from pension to disability allowed the obligor to circumvent property settlement and constituted an extraordinary circumstance).

But an attorney's error, erroneous advice, or negligence are not sufficient grounds for vacating a judgment. *Lane v. Brown & Haley*, 81 Wn. App. 102, 109, 912 P.2d 1040 (1996). Similarly, an unfair result, even when caused by poor representation, is insufficient grounds to vacate. *See In re Marriage of Burkey*, 36 Wn. App. 487, 488-90, 675 P.2d 619 (1984).

In *Burkey*, Ms. Burkey discovered that she had received inadequate representation and moved to vacate a decree of dissolution based on her allegation that Mr. Burkey had failed to inform her of the value of all of their property. *Id.* at 488. The court held that vacation of the dissolution decree was improper. *Id.* at 489-90. The court stated that the parties knew of all the property, there was no fraud between Mr. Burkey and Ms. Burkey's attorney, and Mr. Burkey was not responsible for the quality of Ms. Burkey's representation. *Id.*

In addition, in *In re Marriage of Yearout*, this court held that extraordinary circumstances did not exist when an obligor lost 25 percent of his income, allegedly making it impossible to meet his child support and other obligations. 41 Wn. App. 897, 898, 902, 707 P.2d 1367 (1985).

b. Extraordinary Circumstances Analysis

Here, the trial court vacated the 2013 child support order based on the parties' failure to inform the court of the I-864 affidavit when the court entered the child support order. The trial court stated that the affidavit was a "significant factor" and that imposing child support without considering it created an "unjust result." CP at 124. It appears that the trial court's rationale was that the I-864 affidavit was new evidence not previously considered. But we hold that the

court's failure to consider the I-864 affidavit in the 2013 proceeding is not the type of extraordinary circumstance required by CR 60(b)(11).

First, it is questionable whether the I-864 affidavit would have impacted Tatyana's child support obligation even if it had been presented to the court in 2013. During the 2013 proceedings, the court found that Tatyana was voluntarily unemployed and the parties agreed to impute income of $2,080 per month to her. The court used Tatyana's imputed income to calculate her child support obligation, and that obligation applied regardless of her actual income. *See In re Marriage of Goodell*, 130 Wn. App. 381, 389-90, 122 P.3d 929 (2005) (stating that a parent cannot avoid child support by remaining voluntarily unemployed or underemployed).

The I-864 affidavit would not have changed Tatyana's income for purposes of the child support calculation. The I-864 affidavit required John to provide payments to Tatyana only when her income was below 125 percent of the federal poverty guideline. *See Khan*, 182 Wn. App. at 798-99. At the time of the 2013 child support order, this income level was $1,197 per month.[5] But even if John was required to pay that amount to Tatyana, her child support obligation would not decrease because her *imputed* income for child support was significantly greater. Therefore, even if the trial court had considered the I-864 affidavit in 2013, the affidavit would have had no practical effect.

In her earlier motions to avoid her child support obligations, Tatyana argued that the trial court erred in imputing income to her. But a revelation that Tatyana may be entitled to I-864 payments is not a reason to question the validity of the court's 2013 ruling that she was

---

[5] The child support schedule attached to the 2013 order listed $1,197 as 125 percent of federal poverty guideline, to serve as a "Self-Support Reserve." CP at 20.

voluntarily unemployed. Tatyana's entitlement to payments under the I-864 affidavit is a separate issue from whether she was voluntarily unemployed. And even if the imputation of income to her was error, legal errors cannot be the basis for a CR 60(b) motion; they must be corrected on appeal. *In re Marriage of Tang*, 57 Wn. App. 648, 654, 789 P.2d 118 (1990). Tatyana did not appeal the court's 2013 calculation of child support payments.

Second, the fact that John's I-864 obligation might be relevant as an offset for Tatyana's child support obligation[6] does not constitute an extraordinary circumstance. Even if John owed money to Tatyana, that amount would not affect the amount of Tatyana's child support obligation. The trial court's calculation under RCW 26.19.065 and .071 determines the amount of child support based on actual or imputed income. And Washington dissolution law and a spouse's I-864 obligations are independent of each other. *Khan*, 182 Wn. App. at 801. "Nothing in the federal statutes or regulations provides that an I-864 obligation must . . . be enforced in a dissolution action." *Id.*[7]

Third, there is reason to be cautious about vacating an order in circumstances like this one, where a party has merely presented new evidence that was previously available but not identified. CR 60(b)(11) does not relieve a party from a final judgment simply because some important evidence was not produced at trial. Reducing the threshold for what qualifies as an extraordinary circumstance also cuts against judicial values of preservation of resources and finality. *See Guardado v. Guardado*, 200 Wn. App. 237, 244, 402 P.3d 357 (2017) (recognizing

---

[6] The trial court explained, "[I]f a court was entering a child support order, it would take into account whether or not the person receiving child support was also paying spousal maintenance." RP (Nov. 2, 2016) at 472.

[7] However, as this court noted in *Kahn*, Tatyana can enforce the I-864 support obligation against John in a separate action. 182 Wn. App. at 803-04.

value of preserving resources); *Shandola*, 198 Wn. App. at 895 (stating that finality of judgments is "a central value in the legal system").

Tatyana's primary argument seems to be that extraordinary circumstances exist because she lacked the resources to meet her past child support obligations. But to the extent that her argument is that the 2013 child support order is too burdensome, an unfair result does not amount to extraordinary circumstances as required by CR 60(b)(11). *See Yearout*, 41 Wn. App. at 902.

Tatyana also argues that extraordinary circumstances are present because her situation when she first arrived in the United States allowed John to take advantage of her. She points out that she did not know English, did not have friends or family, and did not have any money. Her limitations on arriving to the United States may explain why Tatyana was previously unaware of the I-864 affidavit. But Tatyana's limitations in 1999 do not demonstrate extraordinary circumstances to justify vacating the 2013 child support order. Whether her discovery of the I-864 affidavit is an extraordinary circumstance depends on how it impacts the validity of that order.

Finally, Tatyana argues that extraordinary circumstances exist because John knowingly withheld the I-864 affidavit from the court in the 2013 proceedings. But there is no evidence to support her argument. John testified that he was unaware that he had completed or filed the form. The I-864 affidavit Tatyana produced at the CR 60(b)(11) trial was signed in 1999, over a decade before any of the relevant proceedings began. John stated in multiple declarations that he did not remember filling out the I-864 affidavit, and added that he did not believe he was required to do so based on Tatyana's type of visa. The trial court made no factual finding that John knowingly withheld the affidavit from her.

13

3.    Extraneous to the Proceedings

To vacate an order under CR 60(b)(11), any extraordinary circumstances must either be an irregularity extraneous to the court's action or go to the question of the regularity of the proceedings. *Tatham v. Rogers*, 170 Wn. App. 76, 100, 283 P.3d 583 (2012). The extraordinary circumstance must demonstrate a " 'fundamental wrong' " or a " 'substantial deviation from procedure.' " *In re Marriage of Furrow*, 115 Wn. App. 661, 674, 63 P.3d 821 (2003) (quoting Philip A. Trautman, *Vacation and Correction of Judgments in Washington*, 35 WASH. L. REV. 505, 515 (1960)).

For example, an irregularity extraneous to the court's action occurs when a trial court fails to disqualify itself as required by the controlling judicial code. *See Tatham*, 170 Wn. App. at 100-01. An irregularity is also extraneous to the proceedings when there has been a change in the law, *Union Bank, NA v. Vanderhoek Assocs., LLC*, 191 Wn. App. 836, 845, 365 P.3d 223 (2015), or when an unforeseen event occurs after proceedings conclude. *See Knies*, 96 Wn. App. at 250-51 (applying CR 60(b)(11) when obligor's source of income changed, circumventing property settlement agreement).

Here, Tatyana's failure to submit the I-864 affidavit to the court previously was not an event extraneous to the 2013 proceedings that resulted in entry of the child support order. No event outside of the proceedings impacted that order. Rather, Tatyana identified evidence that should have been presented in the earlier proceedings but was not. But presentation of evidence regarding the parties' income was specifically at issue in the proceedings leading up to the 2013 child support order.

14

4. Summary

We hold that Tatyana's motion did not identify an event that was either an extraordinary circumstance or extraneous to the 2013 proceedings resulting in entry of the child support order. Accordingly, we hold that the trial court abused its discretion in vacating the 2013 child support order under CR 60(b)(11).[8]

C.    AWARD OF EXPERT WITNESS FEE

John argues that the trial court erred in awarding to Tatyana a portion of Gairson's expert witness fee. We disagree.

1. Award of Costs

Under RCW 26.09.140, the trial court in a dissolution action "after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding." This statute authorizes an award of costs on a motion to vacate filed in a dissolution action. *In re Marriage of Moody*, 137 Wn.2d 979, 993-94, 976 P.2d 1240 (1999). An award of costs under RCW 26.09.140 is not necessarily limited to the prevailing party. *In re Marriage of Rideout*, 150 Wn.2d 337, 357, 77 P.3d 1174 (2003).

In determining whether to award costs, the trial court compares each party's relative need and ability to pay. *In re Marriage of Spreen*, 107 Wn. App. 341, 351, 28 P.3d 769 (2001). We review a trial court's decision regarding an award under RCW 26.09.140 for abuse of discretion. *In re Marriage of Obaidi*, 154 Wn. App. 609, 617, 226 P.3d 787 (2010).

---

[8] John also argues that Tatyana's CR 60(b) motion was not filed within a reasonable time as that rule requires. Because we reverse on other grounds, we do not address this argument.

Here, the trial court awarded Tatyana costs of $8,533, based on its calculation of two-thirds of Gairson's expert witness fee for preparing and testifying. The trial court stated that it considered the parties' relative assets, including that Tatyana was "essentially unemployed and homeless" and that John earned roughly $4,500 per month. RP (Dec. 9, 2017) at 17. The trial court recognized that Gairson spent more time on this case than was typical. But the trial court concluded that the fee was reasonable based on Tatyana's language barriers, her lack of familiarity with the law, and the complicated nature of the case.

The court evaluated the amount of Gairson's fee and considered the parties' respective abilities to pay. Accordingly, we hold that the trial court did not abuse its discretion in awarding Tatyana these costs.

D.  AWARD OF CR 11 SANCTIONS

John argues that the trial court erred in imposing sanctions against him under CR 11 without adequate written findings supporting the sanctions. We agree.

CR 11(a) requires every pleading, motion, and legal memorandum of a party represented by an attorney to be signed and dated by an attorney of record. The attorney's signature certifies that, to the best of the attorney's knowledge and based on an inquiry reasonable under the circumstances, the pleading, motion, or legal memorandum was not filed "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." CR 11(a)(3).

CR 11(a) authorizes the imposition of an appropriate sanction for a violation of the rule, including reasonable attorney fees and litigation expenses. *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 190, 244 P.3d 447 (2010). We review imposition of CR 11 sanctions for abuse of discretion. *In re Marriage of Lee*, 176 Wn. App. 678, 690, 310 P.3d 845 (2013).

When the trial court imposes CR 11 sanctions, it must state the basis for the sanctions in its CR 11 order. *Biggs v. Vail*, 124 Wn.2d 193, 201, 876 P.2d 448 (1994). In *Biggs*, the Supreme Court stated:

> [I]n imposing CR 11 sanctions, it is incumbent upon the court to specify the sanctionable conduct *in its order*. The court must make a finding that either the claim is not grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, or the paper was filed for an improper purpose.

*Id.* (emphasis added) (additional emphasis omitted). The court remanded because there were no such findings. *Id.* at 201-02.

This court cited *Biggs* in requiring findings supporting the imposition of sanctions in the trial court's CR 11 order:

> [T]he court must make explicit findings as to which pleadings violated CR 11 and as to how such pleadings constituted a violation of CR 11. The court must specify the sanctionable conduct in its order.

*N. Coast Elec. Co. v. Selig*, 136 Wn. App. 636, 649, 151 P.3d 211 (2007). Written findings are not necessarily required as long as comprehensive oral findings are expressly incorporated into the court's CR 11 order. *Johnson v. Mermis*, 91 Wn. App. 127, 136, 955 P.2d 826 (1998).

Here, the trial court explained its ruling orally, stating that John improperly represented facts regarding filing the I-864 affidavit in a declaration statement. But the court's order imposing sanctions did not state the basis for the sanction or incorporate its oral ruling. Therefore, the trial court's sanction award was insufficient under *Biggs* and *North Coast Electric* and we vacate the trial court's CR 11 order.

E.  ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal. John requests fees based on Tatyana's alleged intransigence. Tatyana requests attorney fees and costs under RCW 26.09.140 based on

her financial need and because John's appeal is frivolous. We decline to award attorney fees to either party.

## CONCLUSION

We reverse the trial court's order vacating the 2013 child support order, reverse the trial court's December 2016 order vacating the October 13, 2015 order that prospectively modified Tatyana's child support obligation, and reinstate the October 13, 2015 order. We affirm the trial court's award of expert fees to Tatyana under RCW 26.09.140. And we vacate the trial court's order imposing CR 11 sanctions on John and remand either for entry of specific findings supporting the award of CR 11 sanctions that are included or incorporated in the court's CR 11 order or a determination that CR 11 sanctions are not warranted.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

WORSWICK, J.

LEE, J.