**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Marriage of | ) No. 78236-3-I |
| | ) |
| RICHARD DENNIS GROVES, | ) |
| | ) DIVISION ONE |
| Respondent, | ) |
| | ) PUBLISHED OPINION |
| and | ) |
| | ) FILED: August 26, 2019 |
| MARY NOONAN GROVES, | ) |
| | ) |
| Appellant. | ) |
| | ) |

MANN, A.C.J. — Mary Groves appeals the trial court's characterization and division of her former husband, Dennis Grove's, Law Enforcement Officer and Fire Fighter (LEOFF I) disability allowance.[1] The trial court characterized Dennis's disability allowance as separate property and awarded the entire monthly allowance to Dennis.

While a disability allowance that has the character of compensation for future lost wages is generally separate property and not divisible upon dissolution, a disability allowance that takes the place of a standard retirement pension is more akin to deferred compensation and therefore is divisible upon dissolution. Because Dennis was eligible to retire when he became disabled, and certainly would have retired prior to the parties'

---

[1] For clarity we refer to the parties by their first name. No disrespect is intended. Dennis's brief and the trial court orders refer to the respondent as "Dennis" despite his legal first name being Richard. We will follow suit.

dissolution, his disability allowance was more akin to deferred compensation and should have been characterized as community property. Further, the trial court's failure to divide Dennis's disability allowance—the parties' most substantial asset—indicates that the final division of property was unfair, unjust, and inequitable. Accordingly, we reverse and remand.

I.

Dennis joined the Seattle Fire Department on February 11, 1963, and became a lieutenant in 1979. Dennis and Mary married on November 18, 1991; they did not have any children together. In October of 1992, Dennis was injured in the line of duty while fighting a fire. After his injury, the Seattle Firefighters Pension Board doctor determined that Dennis was no longer able to physically handle the duties of a firefighter. Accordingly, on April 15, 1993, the Seattle Firefighters Pension Board approved Dennis's line of duty disability. That decision was subsequently affirmed by the State Department of Retirement Systems on May 5, 1993. Since then, Dennis has received a monthly disability allowance set at approximately 60 percent of the salary of a fire department lieutenant. At the time of trial Dennis was receiving $5,784 a month in disability.

The majority of the couple's assets were brought into the marriage by Dennis. Mary owned a small equity in a condominium and a small IRA deferred compensation account. The mortgage balance on Mary's condominium was fully paid using Dennis's separate liquid investments early in the marriage. The condominium was rented during the marriage and the community shared the revenue. Upon sale, the proceeds from the

sale of the condominium were placed in Dennis's investment accounts. During their marriage, the couple lived in a house that Dennis had separately purchased.

On November 12, 1998, the couple signed a community property agreement. The agreement provided that all of their separate property would be transferred to community property. On the agreement, Dennis hand wrote "Our intention is to now own all of our property together as community property." After signing and having the agreement notarized, the couple drove to three different counties to record the agreement and quit claim deeds that they made out to each other.

On October 21, 2016, after nearly 25 years of marriage, Dennis petitioned for dissolution. Both parties cross moved for summary judgment on the validity of the community property agreement and the characterization of Dennis's disability allowance. On the community property agreement, the trial court rejected Dennis's argument that he was coerced into signing the agreement or that he did not know what he was signing. The trial court found that the agreement was valid and that the parties' actions were "consistent with an intent to make all of their property community." The court reserved on the characterization of Dennis's disability allowance until trial.

After trial, the trial court awarded each party half of their collective assets except Dennis's disability allowance. The court awarded both parties 50 percent each of the net proceeds from the sale of the family home, 50 percent each of various savings bonds, and 50 percent each of Mary's IRA account, a money market account, and a joint account. But the trial court determined that Dennis's disability allowance was his separate property and was not "in any part community in character." Further, the court concluded that "any service related pension/allowance is owned for the most part

-3-

(97.5%) by Dennis as his separate interests as he worked for the [Seattle Fire Department] for 28.5 years before marriage."

The trial court also granted Mary a monthly maintenance of $1,600 for five years. The five-year time frame was intended to last until Mary qualified for Medicare and Social Security payments. At the time of trial, Dennis was 75 years old and Mary was 61.

## II.

Mary argues that the trial court erred in characterizing Dennis's disability allowance as his separate property and then abused its discretion by awarding the full allowance to Dennis. We agree.

## A.

"In performing its obligation to make a just and equitable distribution of properties and liabilities in a marriage dissolution action, the trial court must characterize the property before it as either community or separate." In re Marriage of Kile, 186 Wn. App. 864, 875, 347 P.3d 894 (2015). We review de novo a trial court's characterization of property as separate or community. In re Marriage of Mueller, 140 Wn. App. 498, 503-04, 167 P.3d 568 (2007).

The trial court's characterization, however, is not controlling. In re Marriage of Shannon, 55 Wn. App. 137, 141, 777 P.2d 8 (1989). "Rather, the trial court must ensure that the final division of the property is 'fair, just and equitable under all the circumstances[,]'" In re Marriage of Olivares, 69 Wn. App. 324, 329, 848 P.2d 1281 (1993) (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977)),

because "all of the property of the parties, whether it be community or separate, is before the trial court for disposition." Shannon, 55 Wn. App. at 141.

In dividing property, the trial court must consider: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of property is to become effective. RCW 26.09.080. No factor is afforded greater weight than any other. In re Marriage of Kozen, 103 Wn.2d 470, 478, 693 P.2d 97 (1985).

The trial court has broad discretion in dissolution proceedings "to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). We review a trial court's division of property for a manifest abuse of discretion, Wright, 179 Wn. App. at 261, such as when the trial court exercises its discretion on untenable grounds or "[i]f the decree results in a patent disparity in the parties' economic circumstances." In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572. This is a highly deferential standard and "[t]he spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985).

B.

In reaching its characterization decision, the trial court found that Dennis "was not given the option of taking retirement or disability allowance" and instead that based on the medical evaluation at the time of his injury "the determination was made that he was to take a disability allowance." Based largely on this finding, the trial court

-5-

determined that "the disability allowance received by Dennis [was not] in any part community in character, but rather it is his separate personal property as described by the Court of Appeals in [In re Marriage of Anglin, 52 Wn. App. 317, 759 P.2d 1224 (1988)]."

The trial court's sole focus on whether Dennis elected to receive his disability allowance at the time of his injury was mistaken. It was undisputed that Dennis was eligible to retire and receive a pension before he became disabled at age 50. It is also undisputed at the time of trial Dennis was 75 years old and likely would have been retired and would have been eligible for his LOEFF I pension. Therefore, whether he elected to take disability instead of retirement at the time of his injury should not have been the sole focus of the trial court's analysis. Several cases are instructive.

In In Marriage of Knies, 96 Wn. App. 243, 244, 979 P.2d 482 (1999), the wife was awarded 50 percent of the husband's pension with the Washington State Patrol as part of a 1990 dissolution decree. In 1996, six days before the husband would have been eligible to retire, he became disabled and was awarded disability payments. Knies, 96 Wn. App. at 244. The wife moved for an order directing the husband to pay a portion of the disability payments to her and the trial court agreed. On appeal, the husband argued that the trial court erred in determining that the disability benefits may substitute for retirement pensions for the purposes of property division.

This court affirmed the trial court, noting that while generally "retirement benefits are considered deferred compensation. . . [and] [d]isability payments . . . are considered compensation for lost future wages . . . courts look carefully at the disability payment received to determine whether the payment has characteristics of an earned pension in

addition to disability." Knies, 96 Wn. App. at 251. "By choosing to accept the disability benefits in lieu of retirement, only six days before he was eligible to retire . . . [the husband] effectively altered the character of his disability to one of deferred compensation." Knies, 96 Wn. App. at 252.

Importantly, it was the nature of the benefits that was important in Knies and not the election of those benefits. This was evident in the court's rejection of the husband's argument—the same argument that Dennis made below—that he would not have retired but for the disability: "It was not untenable for the [trial] court to conclude, after hearing all the evidence, that [the husband] intended to remain on disability indefinitely. Therefore, we affirm." Knies, 96 Wn. App. at 252.

Similarly, in In re Marriage of Kollmer, 73 Wn. App. 373, 377-78, 870 P.2d 978 (1994), Division Two of this court affirmed in part the trial court's conclusion that the husband's LEOFF I disability allowance was divisible community property. The court reasoned that:

> [i]nsofar as the trial court determined that [the husband's] LEOFF I benefits were divisible after [he] was "over the age of 50", its determination was correct. At that age, any disability benefit [the husband] would be entitled to receive, up to the amount he would have received as retirement pay at that age, clearly will have the characteristics of compensation for past services. It was, therefore, properly divisible. On the other hand, any disability pay [the husband] has received or will receive prior to becoming eligible to collect retirement pay does not have characteristics of compensation for past services. It was, therefore, error for the trial court to divide it.

Kollmer, 73 Wn. App. at 378.

In contrast, in In re the Marriage of Huteson, 27 Wn. App. 539, 543, 619 P.2d 991 (1980), the husband began working as a Vancouver fireman, and thus became a member of the LEOFF retirement system in 1973. After a 10-year marriage, the parties

separated in 1977. A year later, in 1978, the husband suffered a heart attack and was placed on full disability. At the time he went on disability the husband had been employed less than five years and thus did not have any vested retirement benefits under LEOFF. Huteson, 27 Wn. App. at 540. The trial court determined that the husband's disability income was compensation for loss of future income and not a community asset.

Division Two of this court agreed with the trial court, explaining,

> [b]ut perhaps the most compelling argument favoring a separate property characterization is that disability payments acquired before the disabled spouse has earned a vested right to retirement benefits are designed to compensate solely for loss of future earnings. To treat such disability payments as a community asset would unfairly and permanently burden those future earnings to the same extent as would an award of permanent alimony. We believe such disability payments should not be considered a community asset subject to division in a dissolution proceeding.

Huteson, 27 Wn. App. at 543. The court, however, distinguished the facts before it, with a situation, such as here, where the disability serves as a form of deferred compensation.

> We acknowledge that if the disability pension serves as a form of deferred compensation for past services or is taken in lieu of a vested retirement benefit, circumstances may call for a different characterization. We agree with Kittleson that
>
> > [a]n inflexible rule that required a disability pension to be classified as separate property would ignore the fact that some "disability" pensions step into the place of a regular retirement pension . . . yet other awards are made for disability alone.
>
> Here there are no retirement elements involved in the disability award except for the possibility that respondent may, in the future, return to his firefighter's duty and vest a retirement benefit.

Huteson, 27 Wn. App. at 543 (quoting Marriage of Kittleson, 21 Wn. App. 344, 353, 585, P.2d 167 (1978)).

In Anglin, the case relied upon by the trial court here, the trial court's decree of dissolution characterized the husband's disability allowance as community property but awarded it entirely to the husband. 52 Wn. App. at 218. There, the husband was injured while working as a police officer and received a LEOFF I disability allowance, but the parties had executed a community property agreement prior to their dissolution. Anglin, 52 Wn. App. at 318-19. In distributing the parties' property, the trial court "determined that the disability award was community property (based on the community property agreement)." Anglin, 52 Wn. App. at 319 (parenthesis in original). The trial court nevertheless awarded all of the disability allowance to the husband "based on the age of each party, their respective incomes, and the distribution of other assets and obligations." Anglin, 52 Wn. App. at 319.

This court affirmed "because [the husband] was under 50 . . . the award to him was based solely on his disability, rather than being in the nature of a retirement benefit." Anglin, 52 Wn. App. at 324. Thus, as repayment for lost future wages, the disability award was "not a marital asset to be characterized and distributed by the trial court." Anglin, 52 Wn. App. at 324. Therefore, despite characterizing the disability award as community property, "[t]he trial court below did not abuse its discretion in awarding all of [it] to [the husband]." Anglin, 52 Wn. App. at 324-25.

Finally, in Marriage of Nuss, 65 Wn. App. 334, 343, 828 P.2d 627 (1992), this court upheld the trial court's characterization of a disability allowance as community property able to be distributed. The court reasoned that "[w]here a spouse has elected to receive disability in lieu of retirement benefits, for instance, only the amount of disability received over and above what would have been received as retirement

-9-

benefits is considered that spouse's separate property." Nuss, 65 Wn. App. at 343. This is so because "disability payments which are in the nature of compensation for lost future wages are not an asset for distribution upon dissolution" but, "retirement benefits are considered deferred compensation for past services, and thus the portion of those benefits accrued during marriage is community property." Nuss, 65 Wn. App. at 343.

From this line of cases we conclude that disability benefits that are intended to be compensation for lost future earnings are not distributable upon dissolution,[2] but disability benefits that replace compensation earned but deferred during marriage are potentially distributable.[3] Further, if "a party would be receiving retirement benefits but for a disability, so that disability benefits are effectively supplanting retirement benefits, the disability payments are a divisible asset to the extent they are replacing retirement benefits." Geigle, 83 Wn. App. at 31.

Here, trial court erred by determining that Dennis's disability allowance was his separate property and indivisible at dissolution. Dennis was eligible to retire when he became disabled. Moreover, by the time of trial Dennis was in his 70s and as such, it is reasonable to conclude that before dissolution Dennis would have retired. Thus, but for Dennis's disability, the marital community would have received Dennis's retirement benefits. The disability allowance effectively supplanted the retirement benefits.

The trial court erred by not characterizing Dennis's disability allowance as community property because it had the character of deferred compensation and not compensation for lost future income.

---

[2] See In re Marriage of Brewer, 137 Wn.2d 756, 767-69, 976 P.2d 102 (1999); In re Marriage of Geigle, 83 Wn. App. 23, 30, 920 P.2d 251 (1996); Nuss, 65 Wn. App. at 343; Anglin, 52 Wn. App. at 324.
[3] See Geigle, 83 Wn. App. at 31; Kollmer, 73 Wn. App. at 377; Nuss, 65 Wn. App. at 343; In re Marriage of Leland, 69 Wn. App. 57, 73, 847 P.2d 518 (1993).

C.

The trial court's mischaracterization of Dennis's disability allowance does not, alone, require reversal if the final division of property is otherwise fair. The characterization of property as separate or community is not controlling. Shannon, 55 Wn. App. at 140. "Rather, the trial court must ensure that the final division of the property is 'fair, just and equitable under all the circumstances.'" Olivares, 69 Wn. App. at 329 (quoting Hadley, 88 Wn.2d at 656).

Dennis argues that the trial court's division of property was fair and just under the circumstances. Dennis contends that he accumulated 95 percent of his retirement pension before his marriage to Mary and consequently at most only 5 percent of his retirement pension could be considered community property, of which Mary would only be entitled to half or 2.5 percent of his entire retirement account. The trial court agreed with this proposition when it found that "[a]ny service related pension/allowance is owned for the most part (97.5%) by Dennis as his separate interests as he worked for the [Seattle Fire Department] for 28.5 years before marriage."

But this argument ignores the presence of the community property agreement, which the trial court expressly found to be valid. The community property agreement states that it was Dennis and Mary's intention "to now own all of our property together as community property." There was no exception for retirement accounts that the parties earned prior to the marriage, as is evident by the trial court's equal division of Mary's previously earned IRA account.

Dennis's disability allowance was one of the most substantial assets that the parties had. At the time of trial, Dennis was collecting $5,784 a month in disability and

will continue to do so until his death. And while the trial court split virtually every other asset equally, it awarded Dennis the entirety of his disability allowance. Therefore, the trial court's mischaracterization of Dennis's disability allowance likely affected its distribution of property. While the trial court divided everything the parties owned evenly, it left Mary with a $1600 a month for five years maintenance while Dennis will receive nearly $6000 a month for life. This is not a fair, just, and equitable division of property under the circumstances.

Accordingly, this is one of the rare cases where the appellant has met their heavy burden to show that the trial court manifestly abused its discretion by exercising it on untenable grounds. Landry, 103 Wn.2d at 809-10. The final division appears to result in "a patent disparity in the parties' economic circumstances." Rockwell, 141 Wn. App. at 243. Remand is necessary.[4]

### III.

Mary asks for an award of her attorney fees on appeal. RAP 18.1(a) allows us to do so "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." RCW 26.09.140 allows the court "from time to time after considering the financial resources of both parties [to] order a party to pay a reasonable amount" of attorney fees and costs. Mary requests attorney fees based on the disparity in the parties' financial situations, her demonstrated need, and Dennis's ability to pay. App. at 45. But Mary declines to mention the fact that she recently received half of the net proceeds from the sale of the couple's marital home and other valuable property. The

---

[4] Mary also argues that the trial court erred in awarding her an insufficient maintenance. But because the trial court must reevaluate the division of property on remand, it will necessarily also have to reconsider its award of maintenance. See Marriage of Marzetta, 129 Wn. App. 607, 626, 120 P.3d 75 (2005).

trial court, below, concluded that Mary did not warrant an award of attorney fees and costs. We agree and decline Mary's request for her attorney fees on appeal.

We reverse and remand for the trial court to make a just and equitable distribution of property based on characterizing Dennis's LOEFF payments as community property.

_Mann, A.C.J._

WE CONCUR:

_Leach, J._

_Dwyer, J._