[No. 28180-1-I. Division One. April 27, 1992.]

*In the Matter of the Marriage of* CHARLES RALPH
NUSS, *Respondent, and* JILL KATHLEEN
NUSS, *Appellant.*

*Laura Buckland, Catherine W. Smith,* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant.

*Timothy P. Ryan* and *Brinster, Templeman & Ryan, Inc., P.S.,* for respondent.

BAKER, J. — Jill Kathleen Nuss appeals the order dissolving her marriage to Charles Ralph Nuss, alleging the trial court erred in: (1) charging rent for her postseparation occupancy of the community home; (2) awarding Charles

half the equity in the home on the ground that he brought it into the marriage; (3) distributing the value of her reserved sick leave account as an asset; and (4) finding that the parties' marital community ended in February 1988.

## FACTS

The parties were married in 1983. As of the dissolution trial date, the husband was earning a net monthly income of approximately $3,000. He was 60 years old and had recently undergone heart bypass surgery. The wife was earning a net monthly income of approximately $2,800. She had an MBA degree, was 44 years old, and was in good health.

At the time of the parties' marriage, the husband owned a home in Bothell and the wife owned a home in Everett. They decided to live in the Bothell home and added a second building to the property — a log cabin connected to the original rambler by a 20-foot passageway. The log cabin had no kitchen or laundry facilities of its own. The husband and wife used the cabin as their bedroom suite while their children from prior marriages lived in the rambler. The parties also repaired and redecorated the rambler when they built the cabin.

The building and repair projects were initially financed through a small loan and lines of credit. These were absorbed into a new mortgage when the parties refinanced the property in 1984. During the refinancing process, the husband quitclaimed his interest in the Bothell property to the marital community. Community funds were used to pay for the interim financing as well as the mortgage payments.

In February 1988 a domestic violence protection order was entered giving the wife exclusive possession of the rambler and requiring that the husband live exclusively in the cabin. Pursuant to that order, the husband and his son lived in the cabin, cooking on a hotplate and in a microwave oven, and washing their clothes at a laundromat. The wife and her two children lived in the rambler. The parties continued to participate in marital counseling. They socialized

together and continued to attempt reconciliation until shortly before the husband filed a petition for dissolution in November 1989.

The trial court found that the marital community ended when the domestic violence protection order was entered in February 1988. The court then charged the wife rent for her occupancy of the Bothell rambler after the parties' separation, on the ground that the husband had made all of the mortgage, tax and insurance payments on the property. The rental amount was counted as a personal property award to the wife and also subtracted from the community's equity in the home. The court also determined that the Bothell property had been converted to community property by the husband's quitclaim deed in 1984.

The court found that the wife's Everett home was worth $115,000 to $120,000, subject to $35,000 in mortgages. It found that the Bothell property was worth $240,000, of which $71,000 was attributable to the cabin, and that the community had an equity of $147,000 in the property. The court gave the husband a credit of one-half the equity for having brought the Bothell property into the marriage. The remaining equity in the home, after subtracting the wife's rental amount, was awarded to the husband in order to equalize the parties' overall community property awards.

The court determined that one of the wife's employment benefits at Boeing, a reserved sick leave fund known as the Financial Security Plan, was an asset for distribution and awarded it to the wife. The court calculated the community's interest in the parties' respective retirement benefits based on the separation date of February 1988. By its computations, the trial court divided the remainder of the community property approximately equal between the parties, after deducting the Bothell property credit to the husband.

RENTAL CHARGE ON COMMUNITY PROPERTY

The trial court found that the Bothell property was community property. It also found that following the parties' separation in February 1988, appellant lived in a portion of

the Bothell property basically rent free for 39 months[1] while respondent made the payments on it. There was no evidence at trial concerning the reasonable rental value of the portion of the property occupied by appellant. Nevertheless, the trial court assigned it a rental value of at least $500 per month, based on the fact that appellant's property in Everett, which was worth no more than half the value of the Bothell property, secured a rental income of $660 to $850 per month. The total rent for 39 months came to $19,500. Appellant assigns error to the imposition of rent, the valuation of rent at $500 per month, and the counting of rent as both a personal property asset to her and a deduction from the community's interest in the Bothell property.

It is common for one spouse to be given exclusive possession of the family home during the pendency of a dissolution action. The value of such occupancy normally plays a role in concomitant temporary decisions of the court concerning issues such as child support, maintenance and allocation of debt payments. In appropriate circumstances, a trial court may consider disparate pendente lite allocation of community debts and resources in its allocation decisions at trial.

It is highly unusual, however, to retroactively assign a rental charge to the spouse occupying the family community property home during the pendency of the case, and then reduce that spouse's distributive share of community property accordingly. As in this case, such a determination may significantly impact the residency decisions and requests of a spouse long after the fact. The question before us is whether in this case such a determination was permissible within the broad discretion accorded to trial courts involved in the frequently complicated process of sorting out and fairly distributing the assets and debts of the parties in a marital dissolution action.

The trial court was concerned over the apparent inequities resulting to the husband because he paid the mortgage,

---

[1]The 39 months consisted of 20 months from the date of the domestic violence order, 16 more months during the pendency of this action below, and 3 months posttrial.

taxes and insurance on the property during the lengthy pendency of this action, with no contribution from the wife, who received substantial income during the same period with little or no ability to account for its expenditure at trial. These are understandable concerns which may be reflected in the court's disposition of the parties' assets and debts, perhaps by utilizing a reimbursement theory,[2] or simply by means of an unequal distribution of community assets.

We have found no Washington case directly addressing whether, in a marital dissolution context, a spouse can be charged rent for occupying a portion of community real property. We doubt that such an approach would be proper in any case, but we are convinced that it was improper in this one. The concept was not suggested by either party, and for good reason. *Both* parties occupied this community property throughout the period in question. There was no evidence which would have permitted a sound determination of rental values of the portions of the property occupied by each; indeed, the unique living arrangements of the parties during this period raise serious questions about any attempt to compare the property, or some separate but interconnected parts thereof, to single occupancy rental property located in another area (*i.e.*, the Everett property).

We therefore reverse the trial court's imposition of rent chargeable to appellant.[3]

### AWARD OF EQUITY IN BOTHELL PROPERTY

The trial court found that respondent had converted the Bothell property from separate to community property. Respondent was given a credit of one-half the community equity in the property for having brought it into the marriage.

---

[2]*See, e.g., In re Marriage of DeHollander*, 53 Wn. App. 695, 700, 770 P.2d 638 (1989); *In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984); *In re Marriage of Harshman*, 18 Wn. App. 116, 124 n.2, 567 P.2d 667 (1977); *Merkel v. Merkel*, 39 Wn.2d 102, 116, 234 P.2d 857 (1951).

[3]While there was apparent error involved in treating the rent figure as a deduction from the community property and also as an asset allocable to appellant, it is unnecessary to address this issue.

The court based this award on a finding that no more than half the present value of the property, and probably less than that, was the result of community effort and increase in value since it became community property. The court also based its award on the short duration of the marriage, the younger age and better health of appellant, and her good economic prospects. Appellant challenges this decision.

RCW 26.09.080 requires the trial court to make a just and equitable disposition of property, considering all relevant factors, including the nature and extent of community and separate property, the duration of the marriage, and the economic circumstances of each party at the time of distribution.

Former RCW 26.08.110, repealed in 1973, allowed the court to consider additional factors in distributing property, including "the party through whom the property was acquired". In *Belmondo v. Belmondo*, 3 Wn. App. 958, 480 P.2d 786 (1970), this court relied on that language to approve an award of almost 89 percent of the equity in a community property farm to the wife. The award was based on the wife having brought the farm into the marriage and on the fact that its increase in value was not attributable to the efforts of the husband. *Belmondo*, 3 Wn. App. at 960-61. We rejected the husband's argument that the farm should have been divided more equally because it had been converted to community property. We noted that the statute allowed consideration of the party through whom the property was acquired, and that the farm had remained the wife's separate property for 14 of the parties' 18 years of marriage. *Belmondo*, 3 Wn. App. at 960.

After former RCW 26.08.110 was repealed and replaced by RCW 26.09.080, the court in *In re Marriage of Glorfield*, 27 Wn. App. 358, 617 P.2d 1051, *review denied*, 94 Wn.2d 1025 (1980) considered the same issue and held: "[A]lthough property subsequently changes its status, it may be awarded on the basis of its origin even to the extent of awarding all of it to one spouse." *Glorfield*, 27 Wn. App. at 361. In *Glorfield*, the trial court awarded all the community-owned farmland to the

husband, who had received the land from his father through inheritances prior to marriage and gifts during marriage. The wife's name had appeared on the gift deeds as a courtesy and for gift tax purposes. In upholding the award, the appellate court relied on *Belmondo* and on another case decided under the former statute, *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 408, 433 P.2d 209 (1967), without discussing the fact that the new statute did not expressly allow consideration of the party through whom the property was acquired.[4]

 While the current statute, RCW 26.09.080, does not list the party through whom the property was acquired as one of the factors the trial court must consider, the statute's list of factors is not exclusive. Moreover, one of the factors from the former statute was barred from consideration under the new statute — marital misconduct — while the factor at issue here was not. We hold that the origin of community property as one party's separate property may still be considered in appropriate cases as a reason for awarding all or a disparate share thereof to that party.

 Appellant mischaracterizes the trial court's award, claiming the court ignored respondent's conversion of the Bothell property to community property. On the contrary, the court expressly found it was community property, and disposed of the remaining equity in it as community property. Appellant also incorrectly characterizes the award as an "equitable lien" and then argues respondent made no separate property contributions to the home during marriage on which such a lien could be based. An equitable lien cannot

---

[4]*Glorfield* also cited *In re Marriage of Kittleson*, 21 Wn. App. 344, 585 P.2d 167 (1978), *review denied*, 92 Wn.2d 1009 (1979), which was decided under the new statute. In *Kittleson*, this court stated that a court may consider, *inter alia*, "whether the property to be divided should be attributed to the inheritance or efforts of one or the other, or both." *Kittleson*, 21 Wn. App. at 352. In making this statement, we did not differentiate between inherited property which remained separate property, and inherited property which had been converted to community property. Moreover, *Kittleson* did not deal with inherited property. It dealt with military disability benefits accrued before and during marriage. Therefore, *Kittleson* does not shed light on the question whether the source of community property as one party's separate property is a proper consideration in determining its disposition under RCW 26.09.080.

be awarded in favor of the *same party* to whom the subject property is awarded. However, the court's disposition was not a lien, but simply an unequal award of this piece of property. Nor is appellant correct in faulting the trial court for considering the fact that no more than half the value of the property was attributable to community effort or to increases in value after it became community property. This court approved consideration of the same factor in *Belmondo,* 3 Wn. App. at 960 ("the increase in value of the land and the present value of the land is not attributable to the efforts of the defendant").

■■ The court's unequal award of the Bothell property appears reasonable in light of the short duration of the marriage, the younger age, health and economic prospects of appellant, and especially in light of the fact that appellant retains the full equity in the Everett home she owned prior to the marriage. Although the Everett home is appellant's separate property, all property, whether separate or community, is before the court in a divorce action for such disposition as is equitable. *Friedlander v. Friedlander,* 80 Wn.2d 293, 305, 494 P.2d 208 (1972); *In re Marriage of Parks,* 58 Wn. App. 511, 515, 794 P.2d 59 (1990), *review denied,* 116 Wn.2d 1009 (1991).

The trial court's decision to award the community-owned Bothell property to respondent was well within its discretionary authority.

### BOEING FINANCIAL SECURITY PLAN

One of the benefits appellant receives as an employee of The Boeing Company is a Financial Security Plan (FSP), also called the Reserved Sick Leave Trust Fund. The FSP allows employees to bank up to 40 hours of unused sick leave per year for use in the event of a serious illness or injury that exhausts their regular sick leave benefits. The dollar value of any unused FSP benefits may be received upon death or retirement. Appellant was 100 percent vested in her FSP account.

The trial court found that appellant's $9,228 FSP account was an asset for distribution and assigned it a present

value of $6,000. This $6,000 was added to the personal property awarded to appellant. Appellant argues that the FSP is compensation for loss of future wages, and as such is not an asset subject to distribution.

In the context of disability benefits, our courts have held that disability payments which are in the nature of compensation for lost future wages are not an asset for distribution upon dissolution. *In re Marriage of Kraft*, 61 Wn. App. 45, 49, 808 P.2d 1176, *review granted*, 117 Wn.2d 1007 (1991); *In re Marriage of Anglin*, 52 Wn. App. 317, 324, 759 P.2d 1224 (1988); *In re Marriage of Huteson*, 27 Wn. App. 539, 543-44, 619 P.2d 991 (1980). By contrast, retirement benefits are considered deferred compensation for past services, and thus the portion of those benefits accrued during marriage is community property. *In re Marriage of Kittleson*, 21 Wn. App. 344, 348, 585 P.2d 167 (1978), *review denied*, 92 Wn.2d 1009 (1979); *Huteson*, 27 Wn. App. at 542. However, some disability pensions may substitute for regular retirement pensions or contain elements attributable to retirement pensions. *Kittleson*, 21 Wn. App. at 353. Where a spouse has elected to receive disability in lieu of retirement benefits, for instance, only the amount of disability received over and above what would have been received as retirement benefits is considered that spouse's separate property. *Anglin*, 52 Wn. App. at 323 (citing *In re Marriage of Saslow*, 40 Cal. 3d 848, 860-61, 710 P.2d 346, 351-52, 221 Cal. Rptr. 546 (1985)); *Kittleson*, 21 Wn. App. at 351 (quoting *In re Marriage of Mueller*, 70 Cal. App. 3d 66, 70-71, 137 Cal. Rptr. 129 (1977)); *see also Kraft*, 61 Wn. App. at 45.

The FSP contains elements of both deferred compensation and future earnings replacement. It is similar to vacation leave (which is definitely deferred compensation) in that it converts unused sick leave into something akin to vacation leave, which may be used as needed in the event of future illness, or else taken in cash upon termination of employment.

We uphold the trial court's characterization of the FSP as an asset for distribution, and find no abuse of discretion in its award of that asset to appellant. Since this matter will be remanded, however, it will be appropriate for the trial court to reconsider the valuation of this asset based upon the community property portion thereof as of October 31, 1989, the date on which we determine the marital community ended (see below).

### DATE OF SEPARATION

RCW 26.16.140 provides, in pertinent part: "When a husband and wife are living separate and apart, their respective earnings and accumulations shall be the separate property of each." The determination whether a husband and wife are living separate and apart turns on the peculiar facts of each case. *Togliatti v. Robertson*, 29 Wn.2d 844, 852, 190 P.2d 575 (1948).

The trial court found the date of the parties' separation to be February 1988. Appellant asserts that the parties did not separate until October 31, 1989, 1 month prior to the filing of the petition for dissolution.

"[M]ere physical separation of the parties does not establish that they are living separate and apart sufficiently to negate the existence of a community." *Oil Heat Co. v. Sweeney*, 26 Wn. App. 351, 354, 613 P.2d 169 (1980); *accord, Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 372, 754 P.2d 993 (1988); *Aetna Life Ins. Co. v. Boober*, 56 Wn. App. 567, 571, 784 P.2d 186 (1990). "The test is whether the parties by their conduct have exhibited a decision to renounce the community, with no intention of ever resuming the marital relationship." *Oil Heat Co. v. Sweeney, supra; accord, Aetna Life Ins. Co. v. Boober, supra.*

In the present case, both parties testified that they continued to hope for reconciliation and resumption of a normal marital relationship until shortly before the petition for dissolution was filed. They participated in marital counseling as well as individual counseling in an attempt to save their marriage. They sometimes slept in each other's por-

tions of the property and had sexual relations. They each left some of their personal possessions in the other's portion of the house. They went on two weekend vacations together, one of which was a family reunion. Appellant also testified without contradiction that they went to movies, parties and work-related social events together.

The trial court cited the fact that the parties dated each other, attended counseling together, and attempted to reconcile as indications that they "were not together." However, it is just such facts — especially the attempted reconciliation — that should lead to the conclusion that the marriage was not yet defunct; the parties continued to demonstrate a will to union and had not yet "exhibited a decision to renounce the community, with no intention of ever resuming the marital relationship." *Oil Heat Co.*, 26 Wn. App. at 354.

Respondent argues that the February 1988 separation date is also supported by the fact that the parties handled their finances separately after that date, without accounting to or consulting with each other. *See Togliatti*, 29 Wn.2d at 852. This fact has little significance, however, because throughout their marriage the parties usually managed their finances separately. Moreover, the case cited by respondent in support of this argument is factually distinct from the case at bar. *Togliatti*, 29 Wn.2d at 844 (separation established where parties had obtained an interlocutory decree of divorce, the wife had purported to remarry, and the parties lived apart for 16 years and managed their finances without reference to each other).

By contrast, the case of *Aetna Life Ins. Co. v. Boober, supra*, is factually similar to the present case. In *Boober*, this court reversed a summary judgment, holding that separation had not been established where the parties lived apart for 2 years, but the wife's affidavit alleged that they continued to provide emotional support to each other, had sexual relations, socialized in public, and had not initiated dissolution proceedings or signed a separation agreement. During this time, the wife gave birth to a child by another man and the husband had relationships with other women. We stated:

Plainly, spouses can best judge the viability of their marriage. When they have not yet chosen to institute dissolution proceedings, the continued integrity of their marriage should be presumed except under the most unusual circumstances.

*Boober*, 56 Wn. App. at 572. *But see Peters v. Skalman*, 27 Wn. App. 247, 253, 617 P.2d 448, *review denied*, 94 Wn.2d 1025 (1980) ("so long as the actions of the parties evidence an intent to renounce the marriage, no such formal action is necessary").

Here the parties both testified to facts that established their separation far less clearly than the facts alleged in *Boober*. There was no testimony that either party dated or had relationships with anyone else. There was also strong evidence, absent in *Boober*, that the parties were attempting reconciliation. While the parties lived apart in a manner of speaking, the portions of the Bothell home they occupied were connected by a passageway and the parties visited and slept in each other's portions of the home. As in *Boober*, the period of the claimed separation was short, no separation agreement was signed nor divorce proceeding initiated, and the parties continued social and conjugal contact.

We therefore conclude there was no substantial evidence to support the trial court's finding that the parties' marital community ended in February 1988.[5]

Although it is not the function of this court to weigh the evidence, *Heggen v. Seattle*, 47 Wn.2d 576, 578, 288 P.2d 830 (1955), the evidence here was undisputed. The earliest date by which the parties agree they had given up virtually all hope of reconciliation was October 31, 1989. This date should be accepted as the date on which they began living separately and apart for purposes of RCW 26.16.140. This date is 20 months later than the separation date found by the trial court. Therefore, on remand the court must recalculate the community's interest in the parties' retirement

---

[5]While it was proper for the trial court to consider the fact that a domestic violence protection order required the parties to live apart as of that date, the parties' conduct and intentions should be determinative — not the requirements of the order.

benefits and appellant's FSP benefit to include those 20 months.

We reverse and remand the cause for further proceedings not inconsistent with this opinion.

GROSSE, C.J., and KENNEDY, J., concur.