IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of ARTI SESHADRI, | No. 86047-0-I |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| MADHUSUDHAN ANANDERI KANDADAI, | |
| Appellant. | |

BOWMAN, A.C.J. — In 2023, Arti Seshadri and Madhusudhan Kandadai dissolved their 4-year marriage after a 37-day dissolution trial. Kandadai appeals the trial court's property distribution awards, child support order, postjudgment orders, and determinations about attorney fees. Both parties request attorney fees and costs on appeal. We affirm the trial court's orders and deny both parties fees.

FACTS

Kandadai and Seshadri married in Bengaluru, India, on March 28, 2016. They later moved to Washington. They have one child together, A.M. On June 16, 2020, Kandadai and Seshadri separated. On July 17, Seshadri petitioned to

dissolve the marriage,[1] and the court entered temporary orders. Between November 2022 and April 2023, the case proceeded to a 37-day dissolution trial.

On October 26 and 27, 2023, the trial court entered its findings and conclusions about a marriage and final orders. The court found that the parties had a short-term marriage of four years and that Kandadai entered the marriage with "at least $70,000 to $80,000 of separate savings." When the parties married, Seshadri had a bachelor's degree and Kandadai had a master's degree. Shortly after their marriage, Seshadri got a master's degree in computer science, funded in part by Kandadai's separate funds. As a result, Seshadri secured a high-paying job and had better job opportunities. The court found that Seshadri's gross annual income is about $400,000 and Kandadai's is about $200,000. Based on these findings and others, the court divided all of the parties' joint and separate property and awarded Kandadai $70,000 more than it did Seshadri, including an equalization payment of $24,796. The court determined that its overall property award was fair and equitable.

The trial court also entered a final parenting plan. It found that Kandadai has a history of domestic violence and that both parties engaged in abusive use of conflict. The court awarded Seshadri sole decision-making authority for A.M. and designated her the "primary residential parent." The court also entered a final child support order, requiring Kandadai to pay Seshadri monthly child support in the amount of $560.11. It backdated the order to November 1, 2022,

---

[1] A.M. was five months old at the time.

as Kandadai had overpaid under the temporary child support order, and stated that the overpayment "shall be credited . . . each month until paid off.

On November 9, 2023, Kandadai moved for reconsideration and clarification of the final orders. Among other things, he asked the court to reconsider its division of assets and to clarify its order about overpayment of child support. On February 14, 2024, the court denied the motion for reconsideration as untimely and meritless but granted in part the motion for clarification. It clarified how the Department of Social and Health Services Division of Child Support should carry out the backdated child support order but did not change the order's substance.

Both parties moved for an award of attorney fees.[2] On March 18, 2024, the trial court denied their requests. It found that both parties "at times engaged in some intransigence." It concluded that "any reasonable attorney fees either side is owed for intransigence is offset by any reasonable attorney fees they owe the other side for intransigence" and that both parties "have the ability to pay their own attorney fees."

On March 28, 2024, Kandadai moved for reconsideration, clarification, and revision of the trial court's attorney fee decision and asked the court to award him $244,566 in attorney fees and costs. On April 2,[3] the court denied Kandadai's motion because he failed to note it for a hearing as required under CR 59(b). The same day, Kandadai moved the court to reconsider its April 2 ruling, arguing

---

[2] Kandadai did not include the motions for attorney fees in the record on appeal.

[3] We note the court's filing date-stamp is April 3, 2024.

3

that under the Snohomish County local rules, "there is no requirement that the motion for reconsideration should be noted for the hearing at the same time it is filed."[4]  On April 22, the court again denied Kandadai's motion to reconsider and explained that state court rules, like CR 59, trump local court rules.

On May 3, 2024, Kandadai moved for clarification of the trial court's findings and conclusions about the distribution of his Dell 401(k) savings account. He asked the court to clarify the account's date of division and decide how to divide any appreciation.  On May 24, Seshadri moved the court to enforce its final orders because Kandadai had violated several provisions in the orders and to award her attorney fees for having to bring the motion.

On June 18, 2024, the court denied Kandadai's motion for clarification and granted in part Seshadri's motion to enforce.  It ordered, among other things, that the parties divide the Dell 401(k) account consistent with the decree, that Kandadai "pay his proportional share of all extra-curricular costs for the child for which [Seshadri] makes a claim supported by written documentation as ordered in the final Child Support Order," and that Kandadai turn over to Seshadri certain pieces of jewelry.  The court also found Kandadai intransigent based on his "failures to cooperate in division of assets pursuant to court orders and failures to pay as ordered in the Final Order of Child Support."  It ordered he pay Seshadri $1,000 in attorney fees incurred defending his motion for clarification and $3,000 in attorney fees incurred bringing the motion to enforce.

---

[4] Emphasis omitted.

On June 27, 2024, Kandadai moved for reconsideration of the court's order denying his motion for clarification, granting in part Seshadri's motion to enforce, and awarding attorney fees to Seshadri. He argued that he "did not willfully ignore court orders" and that "there should be no award of attorney's fees."

On August 29, 2024, the court granted in part and denied in part Kandadai's motion for reconsideration. It reduced the amount of attorney fees by $500, reasoning that it granted the motion in part "as to the jewelry issue." But it otherwise denied the motion. And it awarded Seshadri another $1,000 in attorney fees for having to respond to the motion for reconsideration, finding that Kandadai was intransigent and that his positions were frivolous.

Kandadai appeals.[5]

ANALYSIS

Kandadai argues the trial court erred by entering "final orders that unfairly and disproportionately favored [Seshadri] financially." He challenges several of the court's property distribution awards, child support decisions, postjudgment orders, and attorney fee determinations. Both parties request attorney fees and costs on appeal. We address each argument in turn.

---

[5] Kandadai timely appealed the trial court's October 2023 final orders on November 27, 2023. He later amended his notice of appeal to seek review of certain postjudgment orders.

1. Property Distribution

Kandadai argues the trial court inequitably distributed the parties' property

and challenges several of its property distribution awards.[6]

The trial court has broad discretion in dissolution proceedings to make a

just and equitable distribution of property. *In re Marriage of Wright*, 179 Wn. App.

257, 261, 319 P.3d 45 (2013); *see* RCW 26.09.080. It need not divide

community property equally or award separate property to its owner. *In re*

*Marriage of White*, 105 Wn. App. 545, 549, 20 P.3d 481 (2001). On appeal, the

party challenging the court's decision "bears the heavy burden of showing a

---

[6] Seshadri argues that Kandadai waived several property distribution issues on appeal by failing to provide sufficient argument or legal authority in his brief and by inviting error below. We agree.

Specifically, Kandadai argues the trial court erred by (1) not awarding him a Microsoft sign-on bonus he received one day before the parties' separation, (2) awarding him the community Vanguard investment account as his separate property without identifying a date of division earlier than the court's final order, (3) not awarding him "*at least* half" of Seshadri's 2020 tax refund as "community income earned before separation," and (4) not awarding him as separate property his premarriage contributions to his Hewlett Packard Enterprise "Employee Stock Purchase Plan" and any interest gained from that contribution. Because Kandadai fails to support these arguments with citations to legal authority and does not explain how the trial court's rulings amount to an abuse of discretion, he waives these assignments of error. *See Shelcon Constr. Grp., LLC v. Haymond*, 187 Wn. App. 878, 889-90, 351 P.3d 895 (2015) ("We generally do not consider assignments of error unsupported by argument and citations to the record," and "[b]ecause [appellant] fails to argue why these findings of facts are erroneous, we do not consider them."); *see also* RAP 10.3(a)(6).

Kandadai also argues the trial court erred by not valuing his Dell 401(k) account as of the date of separation like it did Seshadri's ServiceNow, Inc. 401(k) account. And he asserts the court erred by not awarding him any postseparation appreciation in his account as separate property. But at trial, Kandadai requested that the court award him $19,558 of the Dell 401(k) account as his separate property and characterize the remainder as community property equally divided between the parties. And in the court's final orders, it granted his request—awarding him $19,558 as separate property and equally splitting the remainder. So, even assuming the court erroneously valued his Dell 401(k) account, Kandadai invited the error. *See Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984) (a party "cannot properly seek review of an alleged error which the party invited").

manifest abuse of discretion." *In re Marriage of Bowen*, 168 Wn. App. 581, 586, 279 P.3d 885 (2012). A court abuses its discretion if it bases its decision on untenable grounds. *Soltero v. Wimer*, 159 Wn.2d 428, 433, 150 P.3d 552 (2007).

We accept a trial court's findings of fact if substantial evidence supports them. *Wright*, 179 Wn. App. at 262. Substantial evidence exists if the record has evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). We "will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

A. <u>Kandadai's Contribution to the Marital Home Down Payment</u>

Kandadai argues that he contributed $82,736 of his separate property to the down payment for the marital home and that the trial court erred by not awarding him that contribution as his separate property. Seshadri argues substantial evidence supports the court's conclusion that Kandadai "failed to trace a separate property interest in the down payment." We agree with Seshadri.

An asset is separate property if, among other things, it is "acquired during marriage with the traceable proceeds of separate property." *In re Marriage of Tulleners*, 11 Wn. App. 2d 358, 369, 453 P.3d 996 (2019). "Separate property brought into the marriage will retain its separate character as long as it can be traced or identified." *Id.* But if community and separate funds "are so

commingled that they cannot be distinguished or apportioned," the entire amount is rendered community property. *Id.*

Here, the court found that Kandadai entered the marriage with at least $70,000 to $80,000 in separate property. And the record shows that in July 2016, Kandadai's account holding those funds became the parties' joint savings account. But Seshadri testified that both parties deposited their incomes into the joint savings account and used it "for every single purchase," including credit card payments, rent, tuition, and vacations. She stated that as a result, they could not differentiate the parties' funds. So, substantial evidence supports the court's findings that when the parties paid the down payment from the joint account in 2018, their funds were commingled such that Kandadai's separate property could no longer be traced. And those findings support the court's conclusion that Kandadai "was unable to trace his premarital funds . . . to the down[ ]payment for the house."

Still, Kandadai asserts that their joint savings account shows "the value of [his] separate funds and their subsequent use for the home down payment."[7] Although the evidence shows the joint account's balances around the time of the 2018 down payment, it omits most transfers between early 2016 when the account held only Kandadai's separate property and 2018 when the parties paid the down payment. So, Kandadai failed to show that the account held his separate funds rather than commingled funds.

---

[7] He adds that a "January 26, 2018 through February 26, 2018 statement reflects the balance one month prior to the transfer to escrow for home down payment."

Kandadai further argues that even if he could not trace his separate property to the down payment, the court should have awarded him an equitable credit for his separate property contribution under *In re Marriage of Nuss*, 65 Wn. App. 334, 828 P.2d 627 (1992). In that case, the husband owned a house before the marriage that became the parties' marital property. *Id.* at 336. The trial court found that the property had been converted to community property but awarded the husband a credit of one-half the equity "for having brought the Bothell property into the marriage." *Id.* at 337. On appeal, we affirmed, holding that "the origin of community property as one party's separate property may still be considered in appropriate cases as a reason for awarding all or a disparate share thereof to that party." *Id.* at 341-42.

Unlike in *Nuss*, Kandadai did not bring real property into the marriage. Instead, he entered the marriage with separate funds—a less identifiable asset. In any event, *Nuss* holds that a court "may" consider the origin of community property as a reason for awarding all or a disparate portion of that property to a party. 65 Wn. App. at 341. And here, the trial court considered the separate property that Kandadai brought into the marriage when it awarded him $70,000 more than Seshadri. Specifically, the court recognized that Kandadai used his separate funds "for community living expenses."

The trial court did not abuse its discretion by denying Kandadai's request for an $82,736 separate property lien as reimbursement for his contribution to the marital home down payment.

B. <u>Gifts to Community for Marital Home Down Payment</u>

Kandadai argues the trial court erred by refusing to characterize funds given to the parties for their down payment on the marital home as community loans. Seshadri argues substantial evidence supports the court's determination that the funds were gifts to the community. We agree with Seshadri.

A loan exists where a person advances money to another person who either expressly or impliedly agrees to repay the money in the future. *Port of Longview v. Taxpayers of Port of Longview*, 85 Wn.2d 216, 225, 527 P.2d 263 (1974). A "completed gift" requires there be "donative intent," an item "capable of passing by delivery," and actual delivery; but it requires no repayment. *See Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd.*, 9 Wn. App. 220, 223-24, 511 P.2d 1360 (1973). An "unexplained transfer of money from a parent to a child raises the presumption that a gift was intended." *Id.* at 224. A party can overcome this presumption with "proof that is certain, definite, reliable and convincing and leaves no reasonable doubt as to the intention of the parties." *Id.*

Here, the parties received $50,000 from Kandadai's family members, which they used for the down payment on their house. Kandadai's father gave the parties $40,000 and wrote on the transfer note, "Gift to Daughter I[n] Law." Seshadri testified that the $40,000 was a gift to her.[8] Kandadai's father testified that his $40,000 was a loan to the parties but admitted there was no writing showing that it was a loan, no interest rate, and no repayment plan. Kandadai's

---

[8] The trial court rejected Seshadri's claim that the funds were a separate gift to her, finding the assertion lacked credibility.

10

cousin also gave the parties $10,000. Seshadri testified that the $10,000 was a gift to the community.

The language on Kandadai's father's transfer note and Seshadri's testimony that both contributions were gifts amount to substantial evidence supporting the trial court's finding that the $50,000 from Kandadai's relatives were gifts to the marital community. And while Kandadai argues that he offered competing testimony about the nature of the contributions, we do not reweigh the evidence. *Greene*, 97 Wn. App. at 714.

C. <u>Kandadai's Mortgage and Utility Payments</u>

Kandadai also argues the trial court abused its discretion by refusing to grant him a $6,393 credit for July 2020 mortgage and utility payments he made on Seshadri's behalf. We disagree.

Again, the trial court has broad discretion to make a just and equitable division of property after it considers all relevant factors. *See* RCW 26.09.080. The court need not make the division with any mathematical precision. *Davis v. Davis*, 13 Wn. App. 812, 814, 537 P.2d 1048 (1975).

On August 19, 2020, the trial court entered a temporary order, requiring Seshadri to pay the mortgage[9] and utilities while she lived in the marital house during the parties' separation. Seshadri refused to make payments. So, Kandadai moved to enforce the temporary order. On October 12, the parties entered an agreed order that Kandadai would make the mortgage and utility payments due July 1, 2020 and that Seshadri would make the payments

---

[9] The home loan was titled in only Kandadai's name.

11

thereafter until she vacated the house.[10]  At trial, Seshadri proposed that the court award Kandadai $6,393 for the July 2020 mortgage and utilities that he paid.  Kandadai requested the same.

In the court's final orders, it did not award Kandadai a separate property credit of $6,393.  Kandadai moved the court to reconsider its decision.  The court denied his motion, explaining that Kandadai

> fails to recognize that the court looks at the overall equity of the entire award, not just each individual expense.  Not only had [Seshadri] done much to maintain the family home equity for the parties after separation so that the home could increase in value, ultimately greatly benefitting both parties, the court awarded [Kandadai] other amounts that resulted in the overall award being fair and equitable.

The court's decision is tenable.  The record shows that the court considered Seshadri's contributions to increasing the value of the home and that it considered Kandadai's request within the context of its overall property distribution under RCW 26.09.080.  And, ultimately, it awarded Kandadai a greater amount of the divided property.

As much as Kandadai also argues that the court's refusal to grant the separate property award is "at odds with" the court's attorney fees order finding that Seshadri was intransigent for failing to pay the mortgage and other expenses, he is incorrect.  The court must distribute property "without regard to misconduct."  RCW 26.09.080.  So, the trial court did not manifestly abuse its discretion.

---

[10] After the agreed order, Seshadri began making payments.

D. Kandadai's Contributions to Seshadri's Education

Kandadai argues the trial court erred by not considering his contributions to Seshadri's graduate degree and enhanced earning potential when it distributed the parties' property. He contends the court failed to apply the factors in *In re Marriage of Washburn*, 101 Wn.2d 168, 677 P.2d 152 (1984), so it did not properly compensate him as the "supporting spouse." We disagree.

In *Washburn*, our Supreme Court held that when "a person supports a spouse through professional school in the mutual expectation of future financial benefit to the community, but the marriage ends before that benefit can be realized," the trial court must consider this as a relevant factor when dividing any property under RCW 26.09.080. 101 Wn.2d at 178. Still, the court refused to provide "a precise formula prescribing the amount of property to be distributed . . . to the supporting spouse." *Id.* at 179. Instead, it directed the trial court to consider several factors to determine the proper compensation for the supporting spouse, including (1) the community funds expended on direct educational costs, (2) the amount the community would have earned had the spouse not been in school, (3) opportunities foregone by the supporting spouse, and (4) the future earning potential of both spouses. *Id.* at 179-80.

Here, Kandadai testified that he contributed $43,772 to Seshadri's education. Kandadai's attorney stated in closing arguments that the court "certainly can give consideration to the request for payment in support of graduate tuition and expenses." The court concluded:

> Although the [c]ourt does not doubt that some of the [h]usband's
> separate property was used to pay community expenses, while the

13

wife earned her master's degree, there is no tracing possible or proven.  The court has taken this into account in equitably dividing the property.  The court is not including this as a line item as separate property or community property.

Still, the record shows that the court considered the applicable *Washburn* factors.[11]  In reaching an equitable property distribution, the court recognized that Kandadai brought $70,000 to $80,000 of separate savings into the marriage and used it for "community living expenses and helped fund the Wife's master's degree."  It also found that as a result of Seshadri's degree, she was "able to secure a high-paying job and have better job opportunities than she would have had without the degree," and that she will presumably "benefit from the opportunities stemming from the degree for the rest of her life."  Further, because of Seshadri's degree, she has a gross annual income of about $400,000, whereas Kandadai's is $200,000.  Based in part on Kandadai's contribution to Seshadri's education and increased earning potential, the court awarded Kandadai $70,000 more than Seshadri in the final order.

The trial court's decision was not untenable and it did not abuse its discretion "by failing to consider any *Washburn* factors."

E.  Seshadri's ServiceNow RSUs

Kandadai argues the trial court erred by characterizing Seshadri's unvested ServiceNow restricted stock units (RSUs) as awards for future services. We disagree.

---

[11] Kandadai cites no authority that the court must specifically identify the *Washburn* factors in its analysis.  *See* RAP 10.3(a)(6).  And he did not testify about his forgone opportunities or what the parties would have earned had Seshadri not gone back to school.

A trial court's characterization of property presents a mixed question of law and fact. *In re Marriage of Kile*, 186 Wn. App. 864, 876, 347 P.3d 894 (2015). We review factual findings supporting the court's characterization for substantial evidence. *In re Marriage of Mueller*, 140 Wn. App. 498, 504, 167 P.3d 568 (2007). The ultimate characterization of the property as community or separate is a question of law that we review de novo. *Kile,* 186 Wn. App. at 876.

To determine how unvested employee stock options are characterized under chapter 26.16 RCW,[12] a trial court must first determine whether the employer granted the stock options to compensate the employee for past, present, or future employment services. *In re Marriage of Short*, 125 Wn.2d 865, 873, 890 P.2d 12 (1995). This involves a specific fact-finding inquiry "to evaluate the circumstances surrounding the grant of the employee stock options." *Id.*

Here, ServiceNow offered Seshadri a full-time position that included an award of RSUs. At trial, Seshadri presented expert testimony from Sarah Hussey, the principal of a firm "specializing in the finances of dissolution," about how to characterize the unvested ServiceNow RSUs. Hussey explained that RSUs for past services are "basically a bonus at the end of the year," those for present services are "an inducement to join the company or to stay with the company," and those for future services are considered "normal compensation."

After analyzing the ServiceNow RSUs under *Short*, Hussey testified that they were compensation for Seshadri's future employment services. She reasoned that they were "a flat dollar amount," which is a "standard" form of

---

[12] Chapter 26.16 RCW provides a spouse's rights and liabilities associated with community property.

compensation "in technology companies."  And that apart from the first year, the vesting began quickly after each annual award, which "indicates that the employee has to . . . complete a year of service before they can receive their compensation for the past four quarters."  She also testified that the RSUs could not be an inducement to join or stay at the company because ServiceNow sponsored Seshadri for an H-1B visa, so Seshadri "did not have an option of joining another company."[13]

In the trial court's final orders, it awarded each party 183 shares of the vested RSUs as community property and awarded Seshadri the remaining unvested shares.[14]  The court explained that it

> reviewed the evidence and applied the . . . *Short* analysis to the receipt and vesting of [Seshadri]'s Service[ ]Now RSUs.  The court finds the RSUs were awarded as future compensation.  The court finds the testimony and report of [Seshadri]'s expert witness, . . . Hussey, to be correct and based upon reliable evidence and expertise.  The court adopts the analysis and conclusions contained in . . . Hussey's report.

Substantial evidence supports the court's determination that the unvested ServiceNow RSUs were compensation for Seshadri's future employment services.  Further, as much as Kandadai argues that Hussey's expert testimony is not credible, the trial court found otherwise.  And again, we do not reweigh the court's credibility assessments.  *Greene*, 97 Wn. App. at 714.

---

[13] Hussey explained that H-1B visa holders "must work for the employer who sponsors their visa."

[14] In the court's asset distribution spreadsheet, it describes these as "all [remaining] shares vested or unvested."  But it appears the remaining shares were all unvested.

The trial court did not err by determining that Seshadri's unvested ServiceNow RSUs were compensation for her future services.[15]

F. Seshadri's ServiceNow 401(k) Account

Kandadai argues the trial court erred by valuing Seshadri's ServiceNow 401(k) account at the date of separation rather than the trial date and awarding Seshadri the account's appreciation. We disagree.

When valuing assets in divorce proceedings, trial courts have broad discretion to pick an evaluation date that is equitable. *Koher v. Morgan*, 93 Wn. App. 398, 404, 968 P.2d 920 (1998). And we will uphold the court's valuation if substantial evidence supports it. *See Griswold*, 112 Wn. App. at 350-51.

Here, the trial court awarded Seshadri $37,103 of her ServiceNow 401(k) account as community property and "any amount in the account above $37,103" as her separate property. It found that the ServiceNow 401(k) account balance "on the date of separation was $37,103, all community property, and that [Seshadri] has continued to add to the value of this account post separation."

Substantial evidence supports the court's award. At trial, Seshadri presented evidence that on the date of separation, the account's balance was $37,103. And she argued that all the money in her ServiceNow 401(k) account earned during the marriage until the date of separation "is community property."

---

[15] Kandadai also complains that the trial court did not calculate the vested RSUs' individual values when it divided them. But Kandadai presented no expert testimony about the value of the vested ServiceNow RSUs. And in his proposed assets and debts division, he requested that the court order Seshadri to provide updated statements with the RSUs' balance and "divide this account as appropriate."

She also testified that she put "post-separation funds into the account" and asked the court to divide the account based on the date of separation.

Still, Kandadai argues that the trial court erred because he presented evidence that on March 31, 2023, the account had a balance of $102,752. But Kandadai offered no evidence that the increase stemmed from a community contribution.

The court did not abuse its discretion by valuing Seshadri's ServiceNow 401(k) account at the date of separation.

### G. Seshadri's $1,900 Withdrawal from Joint Account

Kandadai contends the trial court erred by not characterizing and distributing to the parties $1,900 that Seshadri withdrew from the parties' KeyBank account one day before their separation. We disagree.

At trial, the parties testified about two $1,900 transactions. Kandadai presented evidence that on June 15, 2020, Seshadri withdrew $1,900 from their joint KeyBank account. Seshadri presented evidence of a June 22, 2020 promissory note from Sudharsan Gopalakrishnan, loaning her $1,900. The promissory note stated, "I, Sudharsan Gopalakrishnan, on the request of Arti Seshadri, am giving a loan of $1[,]900 towards maintenance of living expenses. Please repay $1[,]900 when you are able. No interest will be applied." And Seshadri testified that the $1,900 was a loan that she "will have to repay."[16]

The trial court determined that the $1,900 Seshadri borrowed from Gopalakrishnan was a "post-separation loan" and assigned it to Seshadri as a

---

[16] Kandadai suggests that Seshadri used the $1,900 in community funds to pay her $1,900 loan from Gopalakrishnan. But the trial court made no such finding.

separate debt.[17]  And the court did not characterize or distribute the $1,900 that

Seshadri withdrew from the joint account to either party.  But Kandadai fails to

explain how the trial court erred by not characterizing and distributing funds

withdrawn from a joint account before the date of separation.[18]

The trial court did not abuse its discretion.

H.  Overall Property Distribution under RCW 26.09.080

Finally, Kandadai argues that the trial court disregarded two statutory

factors under RCW 26.09.080 and that its overall property distribution "was

unfair, amounting to unjust enrichment that significantly favored [Seshadri]."  We

disagree.

Under RCW 26.09.080, the trial court's division of the parties' property and

liabilities must "appear just and equitable after considering all relevant factors

including, but not limited to":

    (1)  The nature and extent of the community property;
    (2)  The nature and extent of the separate property;
    (3)  The duration of the marriage or domestic partnership; and
    (4)  The economic circumstances of each spouse or domestic
partner at the time the division of property is to become effective.

Kandadai asserts that the court ignored statutory factors (2) and (4).

The record shows the court considered the nature and extent of the

parties' separate property under RCW 26.09.080(2).  The court's assets and

debts division spreadsheet shows it considered, among other things, the parties'

---

[17] In the trial court's asset distribution spreadsheet where it assigned Seshadri the $1,900 as a separate debt, it cited Gopalakrishnan's promissory note.

[18] Kandadai makes no argument that withdrawal of the funds amounted to waste of a community asset.

401(k) accounts, personal loan debt, RSUs, jewelry, and the separate savings that Kandadai brought into the marriage.

Still, Kandadai argues the court disregarded the nature and extent of the separate property because it awarded Seshadri a greater value of her RSUs and more jewelry. He contends the court overlooked the total value of the ServiceNow RSUs awarded to Seshadri by failing to assign them "a specific dollar value." But the court explained that because the stocks "are publicly traded . . . and their value fluctuates daily," it was "fair to divide the stocks by number rather than value." And Kandadai fails to explain how the court's division of the RSUs lends itself to an overall inequitable division of property.

As for the division of jewelry, Kandadai complains that the court awarded Seshadri "a significant portion of gold and silver jewels amounting to $42,050" of separate property and "did not consider this as a factor for equitable distribution." But the court's assets and debts division spreadsheet denotes that it specifically considered its $42,050 separate property award of jewelry to Seshadri in its overall distribution.

The record also shows that the court considered the parties' economic circumstances at the time of property division under RCW 26.09.080(4). In the court's findings and conclusions, it recognized that Seshadri left the marriage with a master's degree, funded in part by Kandadai, and a $400,000 salary. It stated that she will likely always have better job opportunities because of the degree. And it found that in comparison, Kandadai earns $200,000. Based in

part on those economic circumstance considerations, the court awarded Kandadai $70,000 more than Seshadri.

Even so, Kandadai asserts that the court did not consider the parties' economic circumstances because it overlooked his hearing and speech impairment "as a factor for equitable distribution." But there is evidence in the record from which the court could have determined that Kandadai's impairment had no meaningful effect on his economic circumstances. For example, Seshadri testified that Kandadai "does fine with hearing aids without any hassles. Like, for example, he does his work at Dell. Before separation, he did his in-person meetings. He attended his work at Dell without any CART."[19]

The trial court considered the necessary factors under RCW 26.09.080(2) and (4), and Kandadai fails to show that the court's overall property distribution amounts to an abuse of discretion.[20]

## 2. Child Support

Kandadai challenges two of the trial court's child support rulings. He argues the court erred when it allocated the child tax exemptions and backdated the child support order to only November 1, 2022.

We review child support orders for an abuse of discretion. *See In re Marriage of Peterson*, 80 Wn. App. 148, 152, 906 P.2d 1009 (1995). The party

---

[19] Communication access realtime translation.

[20] Relying on his own chart of the parties' "net worth at the time of dissolution," Kandadai argues the final property distribution is inequitable. Because the chart uses figures outside of the record, we do not consider it.

challenging the award must show that the court's decision is manifestly unreasonable or based on untenable grounds. *Id.*

A. Child Tax Exemption

Kandadai argues the trial court abused its discretion by not allowing him to claim their child tax credit in 2023, 2024, and 2025. We disagree.

When the trial court enters a dissolution decree, it must provide for "the allocation of the children as federal tax exemptions." RCW 26.09.050(1). The court has discretion to determine how to allocate children as federal tax exemptions. *See* RCW 26.19.100. It may "divide the exemptions between the parties, alternate the exemptions between the parties, or both." *Id.*

Here, Kandadai testified that Seshadri claimed A.M. for tax purposes in "2020, 2021, [and] 2022." He asked to claim A.M. for 2023, 2024, and 2025 and then the parties could begin alternating years in 2026. The trial court denied his request, ruling that the parties would begin alternating the years they claim A.M. on their federal income tax forms in 2023. Kandadai fails to show how the court's exercise of its broad discretion in allocating A.M. for federal tax exemptions was untenable.

Further, as much as Kandadai argues the trial court's oral ruling on the federal tax exemptions differs from its final written orders, he shows no error. An oral decision is not a judgment, and "[u]ntil a formal order is entered, the court can freely change its mind." *In re Marriage of Barrett*, 33 Wn. App. 420, 422, 655 P.2d 257 (1982). The trial court did not abuse its discretion.

22

B. Child Support Overpayments

Kandadai argues the trial court erred by backdating the child support order to November 1, 2022. He argues the order should be retroactive from August 1, 2020 to credit him for his overpayments during the time temporary orders were in effect. We disagree.

Temporary orders generally terminate when the trial court enters a final decree. RCW 26.09.060(10)(c). And "[c]hild support installments become vested judgments as they become due and may not be retrospectively modified." In re Marriage of Stern, 68 Wn. App. 922, 930, 846 P.2d 1387 (1993).

In March 2021, the trial court entered a temporary child support order. Based on the parties' reported income, the court ordered that Kandadai pay $787 in child support from August 1, 2020 through December 31, 2020. And it ordered he pay $841 from January 1, 2021 forward. At trial, Kandadai testified that Seshadri understated her income at the time of the temporary orders. And that as a result, he overpaid $17,500 in child support. He requested the trial court "make the new [child support] figure effective as of June 2022 when this trial was expected to begin."

In the trial court's final child support order, it determined that Kandadai owed child support payments in the amount of $560.11. And that because of Kandadai's past overpayments, the order was effective from November 1, 2022. The court stated:

> I am going to make this retroactive from November of 2022 when this trial began, because I do feel mother's income was higher by that time. I'm not making it retroactive to the time the temporary orders entered. There was an argument father[ ]

23

> overpaid child support because mother's income was not fully disclosed and/or was set too low.
>
> I'm not convinced, first of all, that that's accurate, because a lot of her income comes through RSUs, which were locked at the time, I presume. And her income has grown significantly over these three years or so [since] the case has been pending.

The record shows that the court reasonably considered when to make the child support payments effective and explained why it chose November 1, 2022. Kandadai fails to show how the court's decision to make the payments effective when the trial began instead of when the court entered its temporary order is untenable.

Alternatively, Kandadai argues the decision was an abuse of discretion because it "directly contradicts" a finding in a subsequent order on attorney fees. In its March 18, 2024 order, the trial court denied the parties' requests for attorney fees, finding that both parties "at times engaged in some intransigence." The court found that Seshadri "materially understate[d] her income in the beginning of this case . . . to support her request for child support." It said Seshadri "claimed her income was about $100,000 lower than it actually was." But in its oral findings about child support at trial, the court explained that Seshadri's exact income was difficult to capture because much of it flowed from the value of her RSUs.

As much as the court's attorney fees finding is in tension with its oral finding at trial, Kandadai cites no authority,[21] and we find none, stating that the

---

[21] See RAP 10.3(a)(6).

court must make a final child support order retroactive to fully accommodate for a party's overpayment.

The trial court did not abuse its discretion by making the child support order effective November 1, 2022.

3. Postjudgment Orders and Attorney Fees

Kandadai challenges certain postjudgment orders and determinations about attorney fees. We address each argument in turn.

A. Kandadai's Motion to Clarify and Seshadri's Motion to Enforce

Kandadai challenges the trial court's June 18, 2024 postjudgment order denying his motion for clarification, granting in part Seshadri's motion to enforce, and awarding Seshadri attorney fees. He argues the court erred by awarding Seshadri fees for those underlying motions because he was not intransigent. And he argues the fees are excessive. We disagree.

An award of attorney fees is within the trial court's discretion. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). The court may consider whether one party's intransigence caused additional legal fees and award attorney fees on that basis. *In re Marriage of Greenlee,* 65 Wn. App. 703, 708, 829 P.2d 1120 (1992).

> Determining intransigence is necessarily factual, but may involve foot-dragging, obstructing, filing unnecessary or frivolous motions, refusing to cooperate with the opposing party, noncompliance with discovery requests, and any other conduct that makes the proceeding unduly difficult or costly.

*Wixom v. Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). If intransigence is shown, the financial status of the party seeking the award is irrelevant.

*Greenlee,* 65 Wn. App. at 708. We review an award of attorney fees based on intransigence for abuse of discretion. *Wixom*, 190 Wn. App. at 725.

Here, in Kandadai's motion for clarification, he asked the court to clarify its finding about dividing the Fidelity accounts holding his Dell 401(k) savings. But the court's findings and conclusions clearly stated that the current value of the accounts were "unknown" and ordered Kandadai "to provide statements from March 2021 to the present date" to Seshadri. Kandadai refused to provide those account statements. Kandadai's noncompliance and request for clarification of a clearly-stated order support the court's finding of intransigence and $1,000 award of attorney fees to Seshadri for having to respond to the motion for clarification.

As for Seshadri's motion to enforce the decree, the trial court granted the motion in part and found Kandadai intransigent for "failures to cooperate in division of assets pursuant to court orders and failures to pay as ordered in the Final Order of Child Support." The court determined, among other things, that Kandadai refused to follow its final orders to pay for A.M.'s extracurricular activities up to a certain amount and to return three pieces of jewelry to Seshadri.

Kandadai's own postjudgment motions show that he refused to comply with the court's final orders. He argued that he should not have to pay for additional extracurricular activities when A.M.'s school "already includes a wide range of enrichment and extra-curricular activities." And that despite the court's orders, he should be awarded the three pieces of jewelry "purchased using [his] pre-marriage separate funds . . . or compensate him with . . . $6[,]200." So, substantial evidence supports the trial court's finding that Kandadai was

intransigent. And that finding, in turn, supports its conclusion that Seshadri was entitled to attorney fees.

Kandadai also argues that the trial court's $4,000 attorney fees award is excessive. But he ignores the court's $500 reduction of the fees for the "jewelry issue" in its order on reconsideration. And, in any event, he fails to support his claim with meaningful argument.[22] So, we do not address the issue.

Because the trial court properly granted attorney fees based on Kandadai's intransigence and Kandadai fails to explain how the fees are excessive, the court did not abuse its discretion.

B. Kandadai's Motion for Reconsideration

Kandadai argues the trial court erred by denying his motion for reconsideration of the court's March 18, 2024 order denying both parties attorney fees. He contends the court erred by denying his motion under CR 59(b). We disagree.

Under CR 59(b), a motion for reconsideration "shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision." We review a trial court's ruling on a motion for reconsideration for abuse of discretion. *See Hockett v. Seattle Police Dep't*, 31 Wn. App. 2d 210, 219, 548 P.3d 271 (2024).

---

[22] *See* RAP 10.3(a)(6).

After trial, the parties filed cross motions for attorney fees and costs. On March 18, 2024, the trial court denied both parties' requests.[23] On March 28, Kandadai moved for reconsideration, clarification, and revision of the trial court's attorney fees decision. But he failed to note it for a hearing as required by CR 59(b). On April 2, the court denied his motion to reconsider on that basis. The same day, Kandadai moved the court to reconsider its denial. The court again denied his motion, explaining that CR 59(b) requires a party filing a motion for reconsideration to note it at the time of filing.

Kandadai cites no authority,[24] and we find none, stating that the trial court erred by denying a motion for reconsideration based on noncompliance with court rules. The trial court did not abuse its discretion.

4. Attorney Fees and Costs on Appeal

Both parties request appellate attorney fees and costs.

A. Kandadai

Kandadai requests attorney fees and costs on appeal under RAP 18.1 and RCW 26.09.140. Under RCW 26.09.140, we may grant an award of attorney fees on appeal based on the parties' financial resources. *In re Marriage of*

---

[23] Kandadai also assigns error to the trial court's underlying March 18 order denying attorney fees. But he makes no argument supporting that assignment of error and does not include the parties' motions for attorney fees in the record on appeal. *See* RAP 10.3(a)(6), 9.6(c)(1)(E). So, we do not address the issue.

[24] Kandadai cites *Buckner, Inc. v. Berkey Irrigation Supply*, 89 Wn. App. 906, 915, 951 P.2d 338 (1998), and *West v. Thurston County*, 144 Wn. App. 573, 578 n.1, 183 P.3d 346 (2008), for the proposition that failure to comply with CR 59(b) does not deprive the court of jurisdiction to hear a motion for reconsideration. But those cases consider whether the underlying court orders on motions for reconsideration were timely appealed under the RAPs. As a result, they are inapt here.

28

*Condie*, 15 Wn. App. 2d 449, 474, 475 P.3d 993 (2020). We also consider the "arguable merit of the issues on appeal." *In re Marriage of Raskob*, 183 Wn. App. 503, 520, 334 P.3d 30 (2014). Here, Kandadai's financial declaration shows no financial need. And he raises no arguably meritorious issues. So, we deny Kandadai's request for attorney fees and costs.

B. <u>Seshadri</u>

Seshadri requests attorney fees and costs on appeal under RAP 18.9, arguing Kandadai's appeal is frivolous. Under RAP 18.9(a), we may order a party who files a frivolous appeal to "pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." Sanctions may include an award of attorney fees and costs to the opposing party. *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009). An appeal is frivolous if, considering the entire record, we are convinced that it presents no debatable issues on which reasonable minds might differ and is so devoid of merit that there is no possibility of reversal. *Id.* And we resolve all doubts about whether an appeal is frivolous in favor of the appellant. *Id.*

Here, whether Kandadai's appeal is frivolous is arguable. Because we must resolve this doubt in favor of Kandadai, we deny Seshadri's request under RAP 18.9.

Seshadri alternatively requests attorney fees and costs based on Kandadai's intransigence. A party's intransigence in the trial court may support an award of attorney fees on appeal. *In re Marriage of Buchanan*, 150 Wn. App.

730, 740, 207 P.3d 478 (2009).  Still, "an attorney fee award remains within the appellate court's discretion."  *Id.*  We deny Seshadri's request.[25]

We affirm the trial court's orders and deny both parties' requests for attorney fees and costs on appeal.

_____, ACJ

WE CONCUR:

Díaz, J.
_____

_____

---

[25] We also note the trial court refused to award Seshadri her attorney fees and costs following trial based, in part, on her intransigence.